[No. S089957. July 23, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
RYAN PATRICK TOLEDO, Defendant and Appellant.

**COUNSEL**

David P. Lampkin, under appointment by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kyle S. Brodie, John L. Gorey and Renee Rich, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**GEORGE, C. J.**—Penal Code section 422 makes it a crime to "willfully threaten to commit a crime which will result in death or great bodily injury to another person" under specified circumstances, a crime that the Legislature currently has denominated the offense of "criminal threat."[1] We granted review in this matter to consider whether, under California law, there is a crime of *attempted* criminal threat. As we shall explain, we conclude that there is such a crime, and that defendant properly was convicted of that offense in this case. Accordingly, we shall affirm the judgment of the Court of Appeal, which upheld defendant's conviction of attempted criminal threat.

### I

This case arises out of a domestic dispute involving defendant Ryan Patrick Toledo, his wife (Joanne Ortega Toledo), and a neighbor (Marychelo

---

[1] Until it recently was amended in 2000, the heading of title 11.5 of the Penal Code (a part of the Penal Code that currently includes only section 422), was entitled Terrorist Threats. (Stats. 1988, ch. 1256, § 4, p. 4184.) In 2000, the heading of title 11.5 was changed to Criminal Threats. (Stats. 2000, ch. 1001, § 4.) The 2000 legislation made no change to the text of section 422 itself. Although the particular offense involved in this case was committed prior to the enactment of the 2000 legislation, we shall refer to the crime set forth in section 422 as the crime of criminal threat, its current nomenclature.

Unless otherwise specified, all further statutory references are to the Penal Code.

Guerra). The evidence at trial, viewed in a light most favorable to the judgment, revealed the following events.

On the evening of January 9, 1998, when defendant picked up Joanne at work, an argument ensued over Joanne's speaking with her supervisor for 10 to 15 minutes when defendant was tired and wanted to return home immediately. The argument continued during the couple's drive home to their apartment. Once there, the dispute escalated. Among other things, defendant threw a telephone into a closet door, tossed a chair across a room, and punched a hole through a bedroom door, and Joanne told defendant that she did not care if he destroyed the apartment, and picked up a lamp and dropped it to the floor. Defendant told Joanne, "You know, death is going to become you tonight. I am going to kill you." Joanne responded that she did not care, in a manner that indicated she had given up hope, and walked away.

Soon thereafter, holding scissors over his shoulder, defendant approached Joanne. Joanne braced herself, and as defendant plunged the scissors toward her neck, she moved back. Defendant stopped the scissors inches from Joanne's skin, and said, "You don't want to die tonight, do you? You're not worth going to jail for." Defendant walked away, and Joanne then went to Marychelo's nearby apartment, crying, shaking, and appearing frightened.

Sometime later, Marychelo began to escort Joanne back to her own apartment. Defendant saw them and chased after Joanne, screaming as he went. Joanne and Marychelo ran back to Marychelo's apartment, and heard a bang, which later was discovered to have been caused by a clothes iron hitting a wall some distance away and shattering into pieces. Later that night, in statements made to an investigating officer, Joanne declared that she "was afraid that" defendant "was going to kill her." By contrast, when she testified at trial, Joanne denied that she had entertained any fear of defendant on the evening in question.

As a result of the foregoing incident, defendant was charged in an amended three-count information with (1) criminal threat against Joanne (§ 422), (2) assault with a deadly weapon (scissors) against Joanne (§ 245), and (3) assault with a deadly weapon (a clothes iron) against Joanne and Marychelo (§ 245). The amended information also alleged, with regard to the criminal threat charge, that defendant personally had used a deadly or dangerous weapon (scissors) in the commission of that offense (§ 12022, subd. (b)(1)). In addition, the information charged that defendant had suffered a prior conviction for assault with a firearm as a basis for enhancement of sentence on the current offenses (§§ 667, subd. (a)(1), 1170.12, subds. (a)-(d)).

After the presentation of evidence at trial, the trial court instructed the jury, among other matters, on (1) the offense of criminal threat and the lesser included offense of attempted criminal threat, (2) personal use of a deadly or dangerous weapon, and (3) the crime of assault with a deadly weapon, and the lesser included offense of simple assault.

After deliberations, the jury returned verdicts finding that (1) defendant was not guilty of the crime of criminal threat against Joanne, but was guilty of the crime of attempted criminal threat against her, and that he did not personally use a deadly or dangerous weapon in the form of scissors in the commission of that offense, (2) defendant was guilty of the crime of assault with a deadly weapon against Joanne involving the attack with scissors, and (3) defendant was not guilty of either the crime of assault with a deadly weapon or of simple assault against either Joanne or Marychelo with regard to the alleged incident involving the clothes iron. In a subsequent bifurcated proceeding, the trial court found that the assault with a deadly weapon offense against Joanne was a serious felony within the meaning of section 667, subdivision (a)(1), and that defendant had suffered a prior conviction for assault with a firearm that constituted both a serious and a violent felony.

After rejecting defendant's contention that his conviction of attempted criminal threat could not stand because there is no such crime in this state, the trial court entered judgment against defendant in accordance with the verdicts, sentencing defendant, in total, to a determinate term of imprisonment for 11 years.[2]

On appeal, defendant asserted, among other claims, that his conviction for attempted criminal threat must be reversed because there is no such crime as attempted criminal threat. The Court of Appeal rejected this contention, finding that such a crime is not inconsistent with the legislative intent underlying the criminal threat statute, and further that there is no constitutional impediment either to recognizing the existence of such a crime or to imposing criminal liability for such an offense under the circumstances of this case.

We granted review to consider these issues. As we shall explain, we conclude that the judgment of the Court of Appeal, upholding defendant's conviction of attempted criminal threat, should be affirmed.

---

[2]For the conviction of assault with a deadly weapon, the court selected the midterm sentence of three years, doubled the term to six years under the provisions of the "Three Strikes" law (§ 1170.12, subds. (a)-(d)), and added a consecutive five-year sentence under section 667, subdivision (a)(1), on the basis of defendant's prior conviction for assault with a firearm. For the conviction of attempted criminal threat, the court imposed a one-year sentence but stayed the imposition of the sentence pursuant to section 654.

## II

■ The principal issue before us is whether there is a crime of attempted criminal threat in California. In analyzing this question, we look first to the statutory provision defining the crime of criminal threat, and then to the law relating to attempt.

### A

As noted above, the crime of criminal threat is set forth in section 422. That statute provides in relevant part: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety" is guilty of a crime, which is punishable alternatively as a misdemeanor or a felony.[3]

■ To render our discussion of this lengthy provision more manageable, we believe it is helpful to divide the crime of criminal threat into five constituent elements that must be established to find that a defendant has committed this offense. In order to prove a violation of section 422, the prosecution must establish all of the following: (1) that the defendant "willfully threaten[ed] to commit a crime which will result in death or great

---

[3]Section 422 reads in full: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison.

"For the purposes of this section, 'immediate family' means any spouse, whether by marriage or not, parent, child, any person related by consanguinity or affinity within the second degree, or any other person who regularly resides in the household, or who, within the prior six months, regularly resided in the household.

" 'Electronic communication device' includes, but is not limited to, telephones, cellular telephones, computers, video recorders, fax machines, or pagers. 'Electronic communication' has the same meaning as the term defined in Subsection 12 of Section 2510 of Title 18 of the United States Code."

bodily injury to another person," (2) that the defendant made the threat "with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out," (3) that the threat—which may be "made verbally, in writing, or by means of an electronic communication device"—was "on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat," (4) that the threat actually caused the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety," and (5) that the threatened person's fear was "reasonabl[e]" under the circumstances. (See generally *People v. Bolin* (1998) 18 Cal.4th 297, 337-340 & fn. 13 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

Furthermore, it also is useful to note that the present version of section 422 was enacted after a former version of section 422 had been held unconstitutional by this court in *People v. Mirmirani* (1981) 30 Cal.3d 375 [178 Cal.Rptr. 792, 636 P.2d 1130]. The former version of section 422 at issue in *Mirmirani*, which was designated the crime of *terrorist* threat, provided in pertinent part that "[a]ny person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with intent to terrorize another or with reckless disregard of the risk of terrorizing another, and who thereby either . . . [c]auses another person reasonably to be in sustained fear for his or [her] or their immediate family's safety[,] . . . [c]auses the evacuation of a building, place of assembly, or facility used in public transportation[,] . . . [i]nterferes with essential public services[,] or . . . [o]therwise causes serious disruption of public activities, is guilty of a felony . . . ." (Former § 422, as added by Stats. 1977, ch. 1146, § 1, pp. 3684-3685.) A companion statute, former section 422.5, defined the term "terrorize" to mean "to create a climate of fear and intimidation by means of threats or violent action causing sustained fear for personal safety in order to achieve social or political goals." (Pen. Code, former § 422.5, as added by Stats. 1977, ch. 1146, § 1, p. 3685.)

In *People v. Mirmirani, supra,* 30 Cal.3d 375, this court held former sections 422 and 422.5 of the Penal Code void for vagueness in violation of the due process clause of section 15 of article I of the California Constitution. (See *People v. Mirmirani, supra,* 30 Cal.3d at pp. 378, 381-388 (plur. opn. of Bird, C. J.); *id.* at p. 388 (conc. opn. of Newman, J.).) Citing decisions including *Watts v. United States* (1969) 394 U.S. 705 [89 S.Ct. 1399, 22 L.Ed.2d 664], and *United States v. Kelner* (2d Cir. 1976) 534 F.2d 1020, the plurality opinion in *Mirmirani* stated that, "[a]lthough the Legislature may . . . penalize threats" without offense to the First Amendment to

the United States Constitution, "even though they are pure speech, statutes which attempt to do so must be narrowly directed only to threats which truly pose a danger to society." (*People v. Mirmirani, supra,* 30 Cal.3d at p. 388, fn. 10 (plur. opn. of Bird, C. J.).) The plurality opinion in *Mirmirani* further noted that the federal circuit court decision in *Kelner* held that a "threat can be penalized only if," in *Kelner*'s words, the threat " 'on its face and in the circumstances in which it is made . . . is so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution . . . .' " (*People v. Mirmirani, supra,* 30 Cal.3d at p. 388, fn. 10 (plur. opn. of Bird, C. J.), quoting *United States v. Kelner, supra,* 534 F.2d at p. 1027.)[4]

Following the decision in *People v. Mirmirani, supra,* 30 Cal.3d 375, the Legislature repealed former sections 422 and 422.5 (Stats. 1987, ch. 828, § 28, p. 2587) and, shortly thereafter, adopted in their place the applicable provisions set forth in the present version of section 422 (Stats. 1988, ch. 1256, § 4, pp. 4184-4185), which, among other changes, incorporate specific language from *United States v. Kelner, supra,* 534 F.2d 1020, 1027, to describe and limit the type of threat covered by the statute.

B

We now turn to the law of criminal attempt. In general, under California law, "[a]n attempt to commit a crime is itself a crime and [is] subject to punishment that bears some relation to the completed offense." (1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Elements, § 53, p. 262 (hereafter Witkin & Epstein.) Section 664 provides in this regard that "[e]very person who attempts to commit *any* crime, but fails, or is prevented or intercepted in its perpetration" (italics added), is punishable as set forth in that provision, ordinarily by imprisonment for one-half the term of imprisonment that would be imposed upon conviction of the completed offense.[5]

Furthermore, as provided by section 21a, "[a]n attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act done toward its commission." As past decisions explain:

---

[4]Three justices dissented in *Mirmirani*, concluding that the provisions at issue were not unconstitutionally vague. (See *People v. Mirmirani, supra,* 30 Cal.3d 375, 389-390 (dis. opn. of Richardson, J., joined by Mosk, J. and White, J. [a Court of Appeal justice, sitting by assignment]).)

[5]Section 664 provides in relevant part: "Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its perpetration, shall be punished where no provision is made by law for the punishment of those attempts as follows: [¶] . . . If the crime attempted is punishable by imprisonment in the state prison, the person guilty of the attempt shall be punished by imprisonment in the state prison for one-half the term of imprisonment prescribed upon a conviction of the offense attempted. . . ."

"One of the purposes of the criminal law is to protect society from those who intend to injure it. When it is established that the defendant intended to commit a specific crime and that in carrying out this intention he committed an act that caused harm or sufficient danger of harm, it is immaterial that for some collateral reason he could not complete the intended crime." (*People v. Camodeca* (1959) 52 Cal.2d 142, 147 [338 P.2d 903].) When a defendant acts with the requisite specific intent, that is, with the intent to engage in the conduct and/or bring about the consequences proscribed by the attempted crime (2 LaFave & Scott, Substantive Criminal Law (1986) § 6.2(c)(1), p. 24), and performs an act that "go[es] beyond mere preparation . . . and . . . show[s] that the perpetrator is putting his or her plan into action" (*People v. Kipp* (1998) 18 Cal.4th 349, 376 [75 Cal.Rptr.2d 716, 956 P.2d 1169]), the defendant may be convicted of criminal attempt.[6]

C

■ Based upon the foregoing statutory provisions, it would appear to follow as a matter of course that there is a crime of attempted criminal threat in this state, defined through the interplay of section 422 and the statutory provisions relating to attempts. As we have seen, section 664, by its terms, provides that "[e]very person who attempts to commit *any* crime" (italics added) is subject to the criminal punishment set forth in that provision, and this language on its face thus includes those who attempt to commit the crime of criminal threat set forth in section 422.

Under the provisions of section 21a, a defendant properly may be found guilty of attempted criminal threat whenever, acting with the specific intent to commit the offense of criminal threat, the defendant performs an act that goes beyond mere preparation and indicates that he or she is putting a plan into action. Furthermore, in view of the elements of the offense of criminal threat, a defendant acts with the specific intent to commit the offense of criminal threat only if he or she specifically intends to threaten to commit a crime resulting in death or great bodily injury with the further intent that the

---

[6]The standard jury instruction defining attempt, which was given to the jury in this case, reads as follows: "An attempt to commit a crime consists of two elements, namely, a specific intent to commit the crime, and a direct but ineffectual act done toward its commission. [¶] In determining whether or not such an act was done, it is necessary to distinguish between mere preparation, on the one hand, and the actual commencement of the doing of the criminal deed, on the other. Mere preparation, which may consist of planning the offense or of devising, obtaining or arranging the means for its commission, is not sufficient to constitute an attempt. However, acts of a person who intends to commit a crime will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to commit that specific crime. Such acts must be an immediate step in the present execution of the criminal design, the progress of which would be completed unless interrupted by some circumstance not intended in the original design." (CALJIC No. 6.00.)

threat be taken as a threat, under circumstances sufficient to convey to the person threatened a gravity of purpose and an immediate prospect of execution so as to reasonably cause the person to be in sustained fear for his or her own safety or for his or her family's safety.

A variety of potential circumstances fall within the reach of the offense of attempted criminal threat. For example, if a defendant takes all steps necessary to perpetrate the completed crime of criminal threat by means of a written threat, but the crime is not completed only because the written threat is intercepted before delivery to the threatened person, the defendant properly may be found guilty of attempted criminal threat. Similarly, if a defendant, with the requisite intent, orally makes a sufficient threat directly to the threatened person, but for some reason the threatened person does not understand the threat, an attempted criminal threat also would occur. Further, if a defendant, again acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for his or her safety even though, under the circumstances, that person reasonably could have been placed in such fear, the defendant properly may be found to have committed the offense of attempted criminal threat. In each of these situations, only a fortuity, not intended by the defendant, has prevented the defendant from perpetrating the completed offense of criminal threat itself.

Although defendant does not deny that the language of the applicable statutes—sections 422 and 664—appears to support the existence of the crime of attempted criminal threat, defendant contends that the reasoning of this court's decision in *In re James M.* (1973) 9 Cal.3d 517 [108 Cal.Rptr. 89, 510 P.2d 33] supports his claim that the crime of attempted criminal threat should not be recognized. In *In re James M.*, we held that there is no crime of attempted assault, reasoning that recognition of such a crime would constitute an improper judicial expansion of the crime of assault. In reaching this conclusion, the court in *James M.* emphasized that the crime of assault is itself statutorily defined in section 240 as an "unlawful *attempt,* coupled with a present ability[,] to commit a violent injury on the person of another" (italics added), and that numerous legal commentators and many courts had noted the anomaly of recognizing as a separate crime an attempt to commit an attempt. (9 Cal.3d at p. 521.) Although the court in *James M.* acknowledged that an "attempted attempt" was not as an abstract matter a "logical absurdity" (*ibid.*), we nonetheless concluded that the crime of assault represented a legislative judgment as to how far removed from the infliction of a battery criminal liability should be imposed. We held that it improperly would defeat the Legislature's intent and effectively redefine the limits

established by the assault statute to recognize a crime of attempted assault. (9 Cal.3d at pp. 521-522.)

The reasoning of *James M.* is inapplicable to this case. Unlike assault, of course, the offense of criminal threat does not contain the word "attempt" as part of its statutory terminology. Furthermore, there is nothing in the language of section 422 suggesting that, for the purpose of construing the law of attempt, the offense of criminal threat should be treated differently from virtually all other crimes as to which the attempt provisions are applicable.[7]

Although we recognize that, in adopting the current language of section 422 after the former versions of sections 422 and 422.5 were found unconstitutionally vague in *People v. Mirmirani, supra,* 30 Cal.3d 375, the Legislature undoubtedly intended to limit criminal liability in this context to the specific category of threats explicitly defined in section 422, that legislative purpose is not inconsistent with the recognition of the crime of attempted criminal threat. As we have discussed above, a defendant can be found to have committed the crime of attempted criminal threat only if he or she acts with the specific intent to make the very kind of threat—that is, a threat that "on its face and in the circumstances in which it is made is so unequivocal, unconditional, immediate and specific as to the person threatened as to convey a gravity of purpose and imminent prospect of execution"—to which section 422 applies. If a defendant acts with such a purpose, but is thwarted from completing the crime by some fortuity or unanticipated event, imposing criminal liability upon the defendant for attempted criminal threat in no way will undermine the legislative purpose of prohibiting threats of the specific nature and severity of those identified in section 422.

---

[7]In a number of instances, courts have held that because an attempt requires that a defendant act with the specific intent to commit the attempted crime, "a defendant cannot be convicted of attempting to commit a substantive crime that by definition must be committed unintentionally." (1 Witkin & Epstein, *supra,* Elements, § 53, p. 263, italics omitted.) For example, the Court of Appeal in *People v. Broussard* (1977) 76 Cal.App.3d 193, 197 [142 Cal.Rptr. 664], concluded that because the crime of involuntary manslaughter by definition involves an unintentional killing, an attempt to commit that crime "would require that the defendant intend to perpetrate an unintentional killing—a logical impossibility," and accordingly held that there is no crime of attempted involuntary manslaughter. (See also *People v. Johnson* (1996) 51 Cal.App.4th 1329, 1332 [59 Cal.Rptr.2d 798].) Similarly, in *In re Kent W.* (1986) 181 Cal.App.3d 721, 724 [226 Cal.Rptr. 512], the Court of Appeal held that because the crime of unlawfully setting a fire as defined in section 452 requires an unintentional burning, there is no crime of an attempt to violate section 452, because "it is a logical impossibility to intend an unintentional result."

The reasoning of these decisions, however, clearly does not apply to an attempt to violate section 422, because that statute does not require that a criminal threat be made *unintentionally,* but on the contrary requires that the defendant specifically intend that the threat be taken as a threat. In asserting that there is no crime of attempted criminal threat, defendant does not rely upon the line of cases involving crimes that can be committed only unintentionally.

Defendant further contends that even if recognition of the crime of attempted criminal threat is not inconsistent with the legislative intent underlying section 422, recognition of such a crime is nonetheless impermissible because such a crime would be unconstitutionally overbroad in violation of the First Amendment. We do not agree.

As this court explained in *In re M.S.* (1995) 10 Cal.4th 698, 710 [42 Cal.Rptr.2d 355, 896 P.2d 1365]: "[T]he state may penalize threats, even those consisting of pure speech, provided the relevant statute singles out for punishment threats falling outside the scope of First Amendment protection. [Citations.] In this context, the goal of the First Amendment is to protect expression that engages in some fashion in public dialogue, that is ' "communication in which the participants seek to persuade, or are persuaded; communication which is about changing or maintaining beliefs, or taking or refusing to take action on the basis of one's beliefs. . . ." ' [Citations.] As speech strays further from the values of persuasion, dialogue and free exchange of ideas, and moves toward willful threats to perform illegal acts, the state has greater latitude to regulate expression. [Citation.] . . . [¶] A threat is an ' "expression of an intent to inflict evil, injury, or damage on another." ' [Citation.] *When a reasonable person would foresee that the context and import of the words will cause the listener to believe he or she will be subjected to physical violence, the threat falls outside First Amendment protection.*" (Italics added.)

In light of these principles, it is clear that the type of threat satisfying the criminal threat provisions of section 422—that is, a threat "to commit a crime which will result in death or great bodily injury to another person . . . which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat"—constitutes speech that falls outside the protection of the First Amendment. (See, e.g., *People v. Lopez* (1999) 74 Cal.App.4th 675, 679-680 [88 Cal.Rptr.2d 252]; *People v. Fisher* (1993) 12 Cal.App.4th 1556, 1558-1560 [15 Cal.Rptr.2d 889]; *In re David L.* (1991) 234 Cal.App.3d 1655, 1661 [286 Cal.Rptr. 398].)

Defendant acknowledges that the speech encompassed by the offense of *criminal threat* is not constitutionally protected, but he maintains that the crime of *attempted criminal threat* is nonetheless unconstitutionally overbroad because that crime assertedly may reach speech beyond that which is penalized by the criminal threat provision. We reject the contention that the crime of attempted criminal threat is unconstitutionally overbroad.

To begin with, defendant's claim misconceives the general circumstances to which the crime of attempted criminal threat ordinarily will apply. The

examples set out above (see pp. 230-231, *ante*), describing some of the most common situations that would support a conviction of attempted criminal threat, demonstrate that in most instances the crime of attempted criminal threat will involve circumstances in which the defendant in fact has engaged in *all* of the conduct that would support a conviction for criminal threat, but where the crime of criminal threat has not been completed only because of some fortuity outside the defendant's control or anticipation (for example, because the threat is intercepted or not understood, or because the victim for some reason does not actually suffer the sustained fear that he or she reasonably could have sustained under the circumstances). In each of these situations, a defendant who is convicted of attempted criminal threat will be held criminally responsible only for speech that clearly is not constitutionally protected, and thus it is evident that in these instances a conviction of attempted criminal threat will pose no constitutional problems.

We need not decide in this case whether the crime of attempted criminal threat properly should be interpreted to reach circumstances in which the defendant has not yet actually made the type of threat prohibited by section 422,[8] nor whether, if the crime does apply to such circumstances, any speech that would constitute an attempted criminal threat would not be constitutionally protected in any event because such speech necessarily would have been made with the specific intent to perpetrate the type of threat covered by the criminal threat statute. Even if we assume that the crime of attempted criminal threat may apply to instances in which an actual threat has not yet been made, and even if we further assume that there may be some unusual circumstances in which the crime of attempted criminal threat theoretically might reach speech that is constitutionally protected, it nonetheless would not be appropriate, as defendant contends, to refuse to recognize the crime of attempted criminal threat on the ground of constitutional overbreadth.

■ As the United States Supreme Court has explained, the overbreadth doctrine is "strong medicine" to be employed "sparingly," and comes into play only when, measured in relation to a statute's constitutionally permissible sweep, "the overbreadth of a statute [is] not only . . . real, but substantial as well." (*Broadrick v. Oklahoma* (1973) 413 U.S. 601, 613, 615 [93 S.Ct. 2908, 2918, 37 L.Ed.2d 830].) A statute may not be found constitutionally invalid on overbreadth grounds simply because it is possible

---

[8]In its opinion below, the Court of Appeal stated in dictum that the crime of attempted criminal threat necessarily requires that the defendant actually make a threat that satisfies the provisions of the criminal threat statute. We need not, and do not, resolve that issue here, because assuming that such a threat is required, the evidence in this case clearly demonstrates that defendant made such a threat. Indeed, at oral argument, defendant's counsel effectively acknowledged this.

to conceive of one or a few impermissible applications; such invalidity occurs only if the provision inhibits a substantial amount of protected speech. (*Houston v. Hill* (1987) 482 U.S. 451, 458 [107 S.Ct. 2502, 2508, 96 L.Ed.2d 398].) ▇▇ Because in virtually all, if not all, of its applications, the crime of attempted criminal threat will apply only to speech that is not constitutionally protected, the overbreadth doctrine may not properly be invoked to preclude recognition of that crime.

Accordingly, we reject defendant's principal claim that his conviction for the offense of attempted criminal threat must be reversed because there is no such crime in this state. For the reasons set forth above, we agree with the Court of Appeal that, under California law, there is a crime of attempted criminal threat.

## III

Finally, not only is the crime of attempted criminal threat not unconstitutionally overbroad on its face, but it also is clear that this offense is not unconstitutional as applied to the facts of the present case. As the Court of Appeal observed, the jury in this case properly could have found that defendant's threat to Joanne—"You know, death is going to become you tonight. I am going to kill you."—was made with the requisite intent and was the type of threat that satisfied the provisions of section 422 and reasonably could have caused Joanne to be in sustained fear for her own safety. At the same time, however, the jury might have entertained a reasonable doubt—in view of Joanne's testimony at trial that she was not frightened by defendant's statements, and the circumstance that Joanne apparently had been willing to return to her apartment with Marychelo on the night in question—as to whether the threat *actually* caused Joanne to be in such fear. Thus, the jury evidently found defendant guilty only of attempted criminal threat rather than the completed crime of criminal threat, not because defendant's conduct fell short of that required by the criminal threat provision, but simply because defendant's threat happened not to have as frightening an impact upon Joanne as defendant in fact had intended. Under these circumstances, it is clear that defendant's conviction of attempted criminal threat was not based upon constitutionally protected speech.[9]

---

[9]Although defendant did not raise the issue in the Court of Appeal or in his petition for review, in the brief filed in this court defendant additionally argues, in response to a supplemental question posed by this court, that his conviction should be reversed because the trial court did not adequately instruct the jury on the crime of attempted criminal threat. As we explained in *In re Marriage of Cornejo* (1996) 13 Cal.4th 381, 388, footnote 6 [53

## IV

For the reasons set forth above, the judgment of the Court of Appeal is affirmed.

Kennard, J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

---

Cal.Rptr.2d 81, 916 P.2d 476], "[w]e may decline to reach an issue, like the present, that was not set forth in the petition for review or any answer thereto, or that is not fairly included in the one that was." (See Cal. Rules of Court, rule 28(e)(2).) In this instance, we decline to address this case-specific issue, which was not timely raised either in the Court of Appeal or in this court.