Filed 2/18/14  P. v. Bassett CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C073005 |
| Plaintiff and Respondent, | (Super. Ct. No. CH029326) |
| v. | |
| RICHARD DEWAYNE BASSETT, | |
| Defendant and Appellant. | |

A jury found defendant Richard Dewayne Bassett guilty of threatening the life of a prosecutor (count I—Pen. Code, § 76, subd. (a) [threatening a public official])[1] and threatening to commit a crime which would result in death or great bodily injury (count II—§ 422 [criminal threat]).

---

[1] Undesignated statutory references are to the Penal Code.

The trial court imposed a three strikes sentence of 25 years to life on both counts, but stayed the sentence on the criminal threat (count II) pursuant to section 654.

On appeal, defendant contends: (1) The evidence is insufficient to support both convictions; (2) the trial court erred by not instructing on its own initiative on the lesser included offenses of attempts; (3) the trial court erred by refusing to give defendant's pinpoint instruction regarding the unequivocal nature of a public official threat; (4) defendant's criminal threat conviction should be reversed because criminal threat is a lesser included offense to that of threat against a public official; (5) defendant cannot be sentenced to a three strikes sentence for threatening a public official; and (6) ex post facto application requires the restitution fine be reduced from $280 to $200.

We conclude the trial court erred in refusing to give defendant's pinpoint instruction, but that error was harmless, and erred in imposing a three strikes sentence for a threat against a public official (count I—§ 76, subd. (a)). We shall vacate the sentence on count I, remand for resentencing, and affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2008, a deputy district attorney (the prosecutor) prosecuted defendant for forcible rape, kidnapping, and robbery. In January of 2009, defendant pleaded guilty and received a 40-year state prison sentence.

While incarcerated, defendant wrote and mailed two letters to the prosecutor. The second letter comprises the two threat offenses at issue here, but both letters comprise evidence of those offenses.

### Letter 1

In October 2009, while serving his sentence in High Desert State Prison in Lassen County, defendant authored a letter in which he threatened to kill the prosecutor (the

2

letter's addressee) and the rape victim. Prison officials intercepted the handwritten letter before it reached the prosecutor.

In this letter, defendant claimed affiliation with the "Northern Rider" gang and threatened that he or his "[h]ome boys" would "[f]ind [the prosecutor] and kill [her]." Defendant wrote that his "Northern Rider Homies" were looking for his rape victim and would kill her as well.

Investigators interviewed defendant shortly after prison officials intercepted the letter. When asked if receiving a letter such as this would cause defendant fear, he responded, "Of course."

Defendant also told investigators that he identified as a Northern Rider gang member and lived in the same prison building as seven Northern Rider gang members. Defendant has a web tattoo on his hand that indicates he is a Northern Rider gang member.

As a result of this letter, defendant pleaded guilty to violating section 422— making a criminal threat—and was sentenced to six additional years in prison. (This § 422 conviction is distinct from the § 422 conviction at issue on appeal here.)

*Letter 2*

In August of 2011, defendant wrote a second letter addressed to the prosecutor. This time, the prosecutor received the letter. As noted, it is this letter that comprises the two offenses on appeal here. That letter read in full:

"Dear  [Prosecutor],

"Hello, there hope you arnt doing to much work, as you know you have taken my whole life from me for a fuck up, but you give child molesters a get out of jail free card on so many occaisions you bitch.  You and that bitch will be killed by me you are not safe I will get you and your family and tell [(rape victim's first name)] she can hide down

3

south but I got her dumb ass dads address ha, ha.  I will get the chance to kill you both in time, I dont need someone else to do it for me.  I will do every thing to kill you both bitch fuck you.  Now you have placed [(rape victim's)] ex-roommate in danger, I have someone watching her you guys are going to die a bad death.  Take care while you can.

"Sincerely,

"Richard Bassett"[2]

Upon reading the letter, the prosecutor felt upset and frightened.  In her 20 years as a prosecutor, she had never received a written death threat.

Based on their prior history, the prosecutor knew defendant to be a "dangerous," "loose cannon" with an "extensive criminal history" who fixated on killing her.  The prosecutor was aware that defendant associated with the "Northern Riders" because of the first letter.  As a result, the prosecutor changed her daily routine to be "more aware of [her] surroundings."  The prosecutor installed an alarm system in her home and limited her professional and personal evening activities.

## DISCUSSION

### I.  Sufficiency of the Evidence

Defendant contends the evidence is insufficient to sustain the convictions of making a criminal threat (§ 422) and making a threat against a public official (§ 76). Defendant challenges the section 422 conviction on the basis that his lengthy prison sentence prevents "an *immediate* prospect of execution of the threat."  (§ 422, subd. (a), italics added.)  Similarly, defendant challenges the section 76 conviction on the basis that he lacked the " '[*a*]*pparent ability* to carry out [the] threat' " because of his prison

---

[2]  The letter was originally written in all capital letters.  All typographical errors are part of the original, handwritten letter.

4

sentence.  (§ 76, subd. (c)(1), italics added.)  Discussing these two arguments in turn, we disagree.

In reviewing the sufficiency of the evidence, we review "the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)  This standard of review is not altered where the People rely primarily on circumstantial evidence.  (*People v. Bloyd* (1987) 43 Cal.3d 333, 346-347.)

## A.  Section 422:  Criminal Threat

Section 422 requires the prosecution to prove five elements:  "(1) [T]hat the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) *that the threat . . . was 'on its face and under the circumstances in which it* [*was*] *made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,'* (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, italics added (*Toledo*); § 422, subd. (a).)

The fundamental question here is whether defendant's lengthy prison sentence forecloses " 'an immediate prospect of execution of the [criminal] threat.' " (*Toledo*, *supra,* 26 Cal.4th at p. 228; § 422, subd. (a).)

5

## 1. Cases involving threats made in custodial situations.

A sampling of relevant cases illustrates when the immediacy element in section 422 is satisfied.

In *People v. Mosley* (2007) 155 Cal.App.4th 313 (*Mosley*), the defendant, an inmate, told one correctional officer that he planned to obtain the officer's contact information from the Department of Motor Vehicles by using a telephone in a courthouse lockup facility, and then pass that information to his gang affiliates so they could kill the officer and rape his wife. (*Id.* at pp. 316-318.) The defendant bragged about the murder of an officer in a nearby correctional facility, claiming that his gang associates were responsible. (*Id.* at pp. 315-321.) Officers also repeatedly found the defendant in possession of weapons in his cell. (*Ibid.*) The defendant argued that the immediacy element was not present because he was an inmate in a segregation module, which constricted his movement. (*Id.* at p. 324.) The court rejected this argument, finding there was substantial evidence in light of the defendant's ability to obtain weapons as well as his gang connections. (*Ibid.*)

In *People v. Gaut* (2002) 95 Cal.App.4th 1425, a defendant in the county jail routinely called his former girlfriend and left messages threatening to kill her. (*Id.* at p. 1429.) The girlfriend feared that the defendant would send someone to her home to harm her because the defendant said, "Somebody gone [*sic*] come see you." (*Id.* at pp. 1429, 1432.) The defendant contended the evidence was insufficient because he was incarcerated at the time of the threat and therefore unable to carry it out. (*Id.* at p. 1431.) The court disagreed and held that the surrounding circumstances, including the defendant's violent history with his former girlfriend, supported the judgment. (*Id.* at pp. 1431-1432.)

In *People v. Wilson* (2010) 186 Cal.App.4th 789 (*Wilson*), the defendant, a prisoner at a correctional institution, threatened several correctional officers that he

6

would " 'blast' " them upon his parole-scheduled release from prison in 10 months. (*Id.* at p. 795.) Defendant claimed to have a history of finding and killing officers. (*Id.* at pp. 815-816.) In contrast to *Mosley*, in *Wilson* the defendant did not have outside contacts, access to weapons, or the ability to carry out the threat at that exact moment; nevertheless, the criminal threat was supported by substantial evidence because the appellate court considered all of the surrounding circumstances and concluded that defendant "effectively made an appointment to kill [the officer] at his earliest possible opportunity." (*Wilson*, at p. 814.)

### 2. Analysis.

In this case, defendant contends there was "no immediacy to the [criminal] threat" because he was serving a lengthy sentence in prison when the prosecutor received the second letter.

Defendant emphasizes that he could not independently carry out the threat. But defendant neglects the significance of his gang connections and prior threats against the prosecutor. As explained in *People v. Mendoza* (1997) 59 Cal.App.4th 1333 (*Mendoza*), "[T]he determination whether a defendant intended his words to be taken as a threat, and whether the words were sufficiently unequivocal, unconditional, immediate and specific [as to convey] to the victim an immediacy of purpose and immediate prospect of execution of the threat can be *based on all the surrounding circumstances and not just on the words alone. The parties' history can also be considered as one of the relevant circumstances.*" (*Id.* at p. 1340, italics added [considering gang membership and the defendant and victim's prior relationship to evaluate the sufficiency of the evidence].)

Here, defendant mailed his first threatening letter to the prosecutor on October 21, 2009.[3] In this letter, defendant threatened that his "[h]ome boys" would "find [the

---

[3] On June 17, 2010, defendant was convicted of a violation of section 422 for the criminal threats contained in the first letter and sentenced to six years.

7

prosecutor], kill [her], and burn [her] house down." Defendant also wrote that his "Northern Rider Homies are looking for [the named rape victim]" and defendant would "kill her as well." The prosecutor did not receive this letter because prison officers intercepted it; however, the district attorney later informed the prosecutor of defendant's threats and provided her a copy of the letter. Therefore, the prosecutor was well informed of defendant's gang affiliations when she received the second letter.

Considering the prosecutor's knowledge of defendant's gang affiliations, it is reasonable that the second letter "conveyed to [the prosecutor] an immediacy of purpose and immediate prospect of execution of the threat . . . *based on all the surrounding circumstances*." (*Mendoza*, *supra*, 59 Cal.App.4th at p. 1340, italics added.) The second letter informed the prosecutor that she "[was] not safe," defendant would "do everything to kill [her]," and defendant had "someone [else] watching" his rape victim's former roommate.

Although the second letter did not explicitly mention "Northern Rider Homies," defendant stated he had someone outside of prison "watching" the rape victim's former roommate. The prosecutor testified that prison gang members often exchange "favors" and that members "associate[] with people who are coming and going [from prison] all the time." Cryptic phrases, such as "I will do everything to kill you both," create the reasonable inference that defendant would implore gang members on the outside to effectuate the threat against the prosecutor. Based on the surrounding circumstances— the language of the first and second letters and defendant's gang connections—the jury could readily infer there was "an immediate prospect of execution of the threat." (§ 422, subd. (a).)

Defendant relies on *Wilson*, *supra*, 186 Cal.App.4th 789 to assert that 10 months in incarceration is the "longest delay [recognized in case law] in the expectation that a threat will be carried out." *Wilson* does not stand for this blanket rule. While the *Wilson*

8

court highlighted that the defendant there was not serving a lengthy or indeterminate term, the court clarified that section 422 does not place a "limited timeline" on when a specific threat must be executed. (*Wilson,* at p. 816.) Furthermore, *Wilson* is distinguishable because there was no evidence the defendant there had outside contacts, whereas such evidence exists here. Because of defendant's outside contacts here, this case is analogous to *Mosley*, in which the surrounding circumstances of outside gang connections constituted substantial evidence of a criminal threat. (*Mosley*, *supra*, 155 Cal.App.4th at pp. 325-326.)

### B. Section 76: Threatening a Public Official

Defendant next claims there is insufficient evidence to support his section 76 conviction—threatening a public official. Specifically, defendant argues that he did not have the "apparent ability" to carry out the threat because of his lengthy incarceration. We disagree.

Section 76, subdivision (a) provides, as pertinent, "Every person who knowingly and willfully threatens the life of, or threatens serious bodily harm to, . . . the staff of any elected public official, . . . with the specific intent that the statement is to be taken as a threat, *and the apparent ability to carry out that threat by any means*, is guilty of [threatening a public official]." (§ 76, subd. (a), italics added.) The statute further defines "apparent ability" as "includ[ing] the ability to fulfill the threat at some future date when the person making the threat is an incarcerated prisoner with a stated release date." (§ 76, subd. (c)(1).)

To ensure that only true threats are criminalized and not free speech, the section 76 statutory requirements of specific intent and apparent ability have been judicially interpreted as proscribing only those threats " 'so unequivocal, unconditional, immediate and specific as to the person threatened, as to convey a gravity of purpose and imminent prospect of execution.' " (*People v. Gudger* (1994) 29 Cal.App.4th 310, 320-321

9

(*Gudger*), quoting *United States v. Kelner* (2d Cir. 1976) 534 F.2d 1020, 1027 (*Kelner*); see also *Watts v. United States* (1969) 394 U.S. 705, 708 [22 L.Ed.2d 664, 667] [distinguishing political hyperbole from a true threat within the meaning of a federal statute].)

The Legislature has codified this constitutionally required language in section 422, but has not similarly amended section 76. (§§ 76, 422 [added by Stats. 1988, ch. 1256, § 4, pp. 4184-4185, as amended by Stats. 1989, ch. 1135, § 1, pp. 4195-4196].) Despite this statutory gap, section 76 "must likewise incorporate such unconditional language to pass constitutional muster." (*Gudger*, *supra*, 29 Cal.App.4th at p. 320.)

Here, the record reflects sufficient evidence of defendant's "apparent ability" to carry out the threat, as that term has been judicially interpreted. Defendant had a specific release date—although the date was not specified— and the ability to fulfill the threat because of his gang connections. Having just expounded the evidence relating to defendant's gang affiliations, previous threats, and immediacy, it is unnecessary to recite it again here.

Furthermore, defendant contends there is no published case relevant to the facts at hand. He is wrong. In *People v. Avila* (2013) 212 Cal.App.4th 819 (*Avila*), filed six months before defendant's opening brief, an incarcerated defendant threatened six deputy district attorneys. Defendant had no parole date, yet the court held that a defendant need not have a parole date to have the " 'apparent ability to carry out that threat' " within the meaning of section 76. (*Avila,* at p. 822; § 76, subd. (a).)

The *Avila* court considered whether an incarcerated prisoner who has no parole date but a "cohort outside of prison who is willing to carry out threats on his or her behalf" has the apparent ability to carry out the threat, and concluded such a defendant does have the apparent ability to effectuate the threat. (*Avila*, *supra*, 212 Cal.App.4th at pp. 827-828.) Here, defendant had a parole date, though in the distant future, *and* a

10

cohort who could act on his behalf; therefore, there is sufficient evidence that defendant had the apparent ability to carry out the threat. To hold otherwise would cause an absurd result—categorical immunity for defendants who make criminal threats but are serving long or indeterminate sentences. (*Avila*, at pp. 827-828.)

## II. Attempted Criminal Threat and Attempted Threat Against a Public Official

Defendant contends the trial court erred in not instructing the jury sua sponte (on its own motion) on the lesser included offenses of attempted criminal threat and, similarly, attempted threat against a public official. We find no error.

A trial court has a sua sponte duty to give instructions on lesser included offenses when the evidence raises a question as to whether all of the elements of the charged offense were present. (*People v. Breverman* (1998) 19 Cal.4th 142, 154-155.) But, this requirement is limited. "[T]he existence of 'any evidence, no matter how weak[,]' will not justify instructions on a lesser included offense . . . ." (*Id.* at p. 162.) A lesser included offense instruction is warranted only if substantial evidence exists from which a reasonable jury could conclude " 'that the lesser offense, but not the greater, was committed.' " (*People v. Avila* (2009) 46 Cal.4th 680, 704-705, quoting *People v. Cruz* (2008) 44 Cal.4th 636, 664.)

Our state Supreme Court concluded, in *Toledo*, *supra,* 26 Cal.4th at page 231, that attempted criminal threat is a lesser included offense of criminal threat. The offense of attempted criminal threat occurs when a defendant acts with the requisite intent, but *fortuity* prevents the defendant from completing the criminal threat. (*Ibid.*) The high court provided three examples of attempted criminal threats: (1) Defendant completes a written threat, but the written threat is intercepted before delivery to the threatened person; (2) defendant makes a sufficient oral threat, but for some reason the threatened person does not understand the threat; and (3) defendant makes a sufficient threat that is

11

received and understood by the threatened person, but the threatened person is not *actually* in sustained fear for his or her safety. (*Ibid.*)

The record does not demonstrate that fortuity prevented defendant's completed criminal threat here. Defendant intended to scare the prosecutor, who received the written threat, understood it, and was in sustained, reasonable fear for her safety. The prosecutor's testimony that the second letter made her "much more aware of [her] surroundings" and "frightened [her]" demonstrates that the threat was not an attempt because the prosecutor was reasonably in sustained fear for her own safety, as required by section 422. Applying similar logic, the crime of attempted threat against a public official is not present here either—the prosecutor reasonably feared for her safety, as required by section 76. Consequently, the trial court did not err in failing to instruct on attempted threats—this is not a *Toledo* attempt of an intervening fortuity (*Toledo*, *supra*, 26 Cal.4th at p. 231), and the jury, on the evidence here, could not have found the lesser attempt without also finding the greater completed offense (*People v. Avila*, *supra*, 46 Cal.4th at pp. 704-705; *People v. Cruz, supra,* 44 Cal.4th at p. 664).

Instead, defendant is simply raising his sufficiency of evidence argument again in the guise of this instruction argument. In addition to the "immediacy" and "apparent ability" elements, defendant challenges the sufficiency of the evidence as to the " 'reasonableness' of [the prosecutor's] fear" and the "actuality" of her fear. We have previously found sufficient evidence of immediacy and apparent ability. Based on the prosecutor's knowledge of defendant's gang involvement, prior violent acts, and direct threats, a jury could find that her fear was reasonable, actual, and sustained.

In any event, the purported instructional errors here were harmless because the jury was instructed on the supposedly lacking elements comprising defendant's attempt theory (immediacy, apparent ability, reasonable fear, actual fear), and found all these elements beyond a reasonable doubt.

12

## III. Requested Pinpoint Instruction

Defendant contends the court erred in rejecting a pinpoint instruction explaining the apparent ability element of section 76. We agree, but find the error harmless.

Pinpoint instructions relate particular facts to a legal issue in the case or " 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi." (*People v. Rincon-Pineda* (1975) 14 Cal.3d 864, 885.) They are required to be given upon request when there is evidence supportive of the theory, but they are not required to be given sua sponte. (*Ibid.*)

A trial court may properly refuse a requested instruction if it incorrectly states the law, is argumentative, duplicative, potentially confusing, or if it is not supported by substantial evidence. (*People v. Burney* (2009) 47 Cal.4th 203, 246.) Similarly, a court may properly refuse a requested instruction if the concept is adequately covered by another instruction. (*People v. Clark* (2011) 52 Cal.4th 856, 975.)

Defendant's proposed pinpoint instruction emphasized the constitutional requisites of section 76 involving apparent ability, explaining, "As with Section 422 of the Penal Code [criminal threat], the threats pr[o]scribed by Section 76 of the Penal Code [threatening a public official] are only those so unequivocal, unconditional, immediate and specific as to the person threatened as to convey a gravity of purpose and [imminent] prospect of execution." As noted, this language satisfies constitutional free speech concerns by criminalizing only true threats, and not free speech such as political hyperbole, jokes, or other innocuous statements. (*Gudger*, *supra*, 29 Cal.App.4th at p. 320.)

The requested instructions pinpointed the crux of defendant's case, namely that defendant lacked the immediacy (§ 422) and apparent ability (§ 76) to carry out the threat given his status as an incarcerated prisoner. It is therefore reasonable that defendant wanted the jury to know that these requirements of unconditionality set forth in section

13

422 also applied to the section 76 offense. The requested instructions were not argumentative, as the language was a correct statement of law, nor duplicative, confusing, or unsupported by substantial evidence.[4]

The trial judge denied the pinpoint instruction on the basis that the pattern instruction involving section 76 (CALCRIM No. 2650) survived appellate review and was thus sufficient. The trial judge did not expressly state which case stood for this holding; however, defendant asserts the judge relied on *People v. Barrios* (2008) 163 Cal.App.4th 270. In *Barrios,* the defendant sought an instruction that required the jury to find that defendant intended his comments to be taken as a threat *and* that he *intended to carry out* the threat. (*Id.* at pp. 275-276.) The court rejected this argument, holding that section 76 does not require *an intent* to carry out the threat. (*Barrios*, at p. 276.) This narrow holding does not apply to the pinpoint instruction at issue here, and does not stand for the principle that all pinpoint instructions relating to CALCRIM No. 2650 must be rejected. (*Barrios*, at p. 276.)

We conclude the trial court erred in rejecting defendant's pinpoint instruction; however, we find no prejudice under the reasonable probability test. (*People v. Hughes* (2002) 27 Cal.4th 287, 363.) The jury considered nearly identical instructions pertaining to immediacy for section 422, and still convicted defendant. Accordingly, there is no reasonable probability that defendant would have obtained a more favorable result had the trial court given defendant's pinpoint instruction concerning section 76. (*Hughes,* at p. 363.)

---

[4] There was evidence of defendant's lengthy incarceration, which the jury could consider in its deliberation of the instructed-upon terms, immediacy and apparent ability.

## IV. Lesser Included Offense

For purposes of this argument, defendant concedes that his conviction for threatening a public official (§ 76) was proper, but argues his criminal threat conviction (§ 422) was improper. Defendant asserts that section 422 is a necessarily included offense within section 76, and he is therefore not subject to such multiple convictions. He is mistaken.

A defendant may generally be convicted of more than one crime arising out of the same act or course of conduct (§ 954; *People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227), except where the multiple convictions are based on " 'necessarily included offenses.' " (*Reed*, at p. 1227, quoting *People v. Montoya* (2004) 33 Cal.4th 1031, 1034.) If an offense is a lesser included offense under the statutory elements test (i.e., if all the elements of the lesser offense as defined by statute are necessarily included in the greater offense), the defendant may be convicted only of the greater offense. (*Reed*, *supra*, 38 Cal.4th at p. 1229; *Montoya*, *supra*, 33 Cal.4th at p. 1034.)

Both convictions here arose from the same action—the written threats in the second letter—but section 422 is not a necessarily included offense within section 76. Under the statutory elements test, the question is whether a defendant may threaten a public official without also committing a criminal threat. (§§ 76, 422.) We find that a defendant may, because of the different fear requirements in each section.

As pertinent here, section 422 requires that the victim "reasonably . . . be in sustained fear for . . . her own safety," whereas section 76 requires only that the victim "reasonably fear for . . . her safety." (§§ 422, subd. (a), 76, subd. (c)(5).) Fear is sustained when it lasts for a "period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156 [fifteen minutes of fear constitutes "sustained fear"].) In contrast, there is no time requirement imposed on the fear experienced by public officials.

15

It is possible, therefore, to commit a section 76 offense without also committing a section 422 offense. As an example, if a defendant genuinely threatens a public official, and the official experiences reasonable, but fleeting fear, defendant may have committed only a section 76 offense.[5]

This temporal distinction is logical, as the People point out, in that a threat to a public official may impair the efficient administration of the official's public duties. The societal repercussions are greater, justifying the omission of the sustained fear requirement.

## V. Unauthorized Three Strikes Sentence

Defendant claims that a three strikes sentence on his section 76 conviction is legally unauthorized. A claim of unauthorized sentence is reviewable on appeal even absent an objection below. (*People v. Scott* (1994) 9 Cal.4th 331, 354.) We agree with defendant, vacate the sentence on his section 76 conviction (count I) and remand for resentencing on that count.

The trial court imposed a three strikes sentence of 25 years to life on both counts I (§ 76, public official threat) and II (§ 422, criminal threat), but stayed the sentence on count II pursuant to section 654.

Under California's newly reformed three strikes sentencing law, applicable here, a defendant with two or more prior violent or serious felony convictions who is subsequently convicted of a "violent felony" under section 667.5, subdivision (c), or a "serious felony" under section 1192.7, subdivision (c), may be sentenced to 25 years to

---

[5] In this case, as noted, there is sufficient evidence that the prosecutor experienced sustained and reasonable fear, as required by sections 422 and 76, respectively.

life on the offense.[6]  Section 76 is not listed as either a violent felony or a serious felony under these statutes.  Consequently, the trial court erred in imposing a three strikes sentence on defendant's section 76 conviction.

Section 422, however, is a serious felony under section 1192.7, subdivision (c), and the three strikes sentence on that conviction is proper.  (§ 1192.7, subd. (c)(38).)  We remand this matter to the trial court to vacate the sentence on count I (public official threat—§ 76) and resentence on that count, and to lift the section 654 stay on the three strikes sentence on count II (criminal threat—§ 422) and make count II the principal term.  (See § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision. . . ."].)

## VI.  Ex Post Facto Violation

Defendant lastly argues that the trial court's imposition of "the $280 [restitution] fees are an ex post facto violation and must be reduced to $200."  The People contend this issue is forfeited on appeal because defendant did not object at sentencing.  Because this statute is considered punishment for purposes of ex post facto analysis (*People v. Valenzuela* (2009) 172 Cal.App.4th 1246, 1248), we disagree that the issue is forfeited, but decline to agree with defendant on the merits.

---

[6]  Defendant was convicted on November 27, 2012, and sentenced in January and February of 2013.  As the People correctly note, the California electorate passed Proposition 36, the Three Strikes Reform Act of 2012, which was effective November 7, 2012.  Pursuant to this reform, which applies to defendant here, the three strikes law now generally requires that the third strike conviction be a serious felony or a violent felony. (§ 1170.12, subd. (c)(2)(C).)

At the time of defendant's offenses in August 2011, the minimum restitution fine a trial court could impose pursuant to former section 1202.4 was $200. (Former § 1202.4, subd. (b) [as amended by Stats. 2009, ch. 454, § 1].) Effective 2012, the minimum was $240 and effective 2013, the minimum was increased to $280. (See § 1202.4, subd. (b)(1) [also scheduling an increase to $300 for 2014].) Specifically, defendant contends that because the minimum restitution fine at the time of his crime was $200, the $280 fine amounts to an unauthorized sentence. Defendant is wrong.

An unauthorized sentence is a sentence that "could not lawfully be imposed under any circumstances in the particular case." (*People v. Scott*, *supra*, 9 Cal.4th at p. 354.) When defendant committed his crime, the minimum restitution fine was $200 and the maximum fine was $10,000. (Former § 1202.4, subd. (b)(1), as amended by Stats. 2010, ch. 351, § 9.) Defendant's $280 fine clearly falls within the lawful discretionary statutory range; therefore, the fine is not a sentence that "could not lawfully be imposed under any circumstances." (*Scott*, *supra*, 9 Cal.4th at p. 354.)

The record does not support defendant's argument that the trial court intended to impose the "lowest" possible restitution fine. The probation report filed in January 2013 recommended that defendant pay a $280 restitution fund fine. At sentencing, the trial court ordered, "A [$]280 restitution fine, a like sum suspended and reserved pursuant to code . . . ." From this succinct comment, we cannot conclude that the trial court intended to impose the minimum possible restitution fine as an act of leniency. Accordingly, the trial court properly exercised its discretion by imposing the $280 restitution fine.

## DISPOSITION

The judgment of sentence on count I (§ 76) is vacated and the matter is remanded for resentencing on that count as specified in part V. of the Discussion of this opinion. In all other respects, the judgment is affirmed.


                                               BUTZ           , J.


We concur:


       BLEASE         , Acting P. J.


       MURRAY       , J.