Filed 1/27/15  P. v. Perez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GABRIEL RUBIO PEREZ,<br><br>    Defendant and Appellant. | G049001<br><br>(Super. Ct. No. 11CF3459)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, John Conley, Judge.  Affirmed.

Rex Adam Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Robin Urbanski and Kathryn Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

*          *          *

## INTRODUCTION

Defendant Gabriel Rubio Perez appeals after a jury found him guilty of two counts of domestic battery with corporal injury, two counts of making criminal threats, and one count of possession of a firearm by a felon. Perez contends insufficient evidence supported his conviction for one of the two counts of making criminal threats, charged as count 3, in the information.

We affirm. Substantial evidence supported Perez's conviction on count 3 for making criminal threats in violation of Penal Code section 422. (All further statutory references are to the Penal Code.)

## FACTS

Perez solely argues in this appeal that insufficient evidence supported his conviction for making criminal threats (as charged in count 3). Given the limited scope of Perez's appeal, our summary of facts is limited to evidence relevant to that offense.

On October 13, 2010, Perez lived in an apartment with his girlfriend, Lesly Lemus, Lemus's 18-month-old son, Perez's nephew, his nephew's wife, and their baby. Lemus was seven months pregnant with Perez's child; they had lived together for about six months. Lemus had experienced a difficult pregnancy up until that time.

At 2:00 a.m., Lemus was sleeping in her bedroom with her son when Perez arrived home. Perez asked Lemus for something to eat; he appeared upset and under the influence of alcohol. Lemus told him to serve himself. Perez told her "that's what [she] was there for and that [she] should do it."

Perez slapped Lemus's face several times, turned her wrists backwards, took off his belt, and hit her arms and a leg with it. He pushed her onto the bed. Lemus's stomach hurt and she felt she was choking. She vomited. Perez pulled her hair twice, pushed her backwards, and hit her in the head with the grip of a gun. Perez told Lemus that if she lost the baby, she was "going to be in trouble." Perez held the gun up to the

2

side of her head. Lemus understood Perez's statement to mean that he was "really" going to harm her; she thought he might use the gun or the belt to do so.

Lemus saw Perez load the gun and tuck it into his shorts. She yelled and asked him to leave her alone. He left the apartment.

Perez testified at trial to a different series of events, as follows. He stated that when he came home around 2:30 a.m., on October 13, 2010, and asked Lemus to feed him, she angrily responded that he should leave and ask "the easy women where [he] was to do it." Perez told Lemus that she was giving him "a lot of trouble" and he "was going to separate" from her and bring back his ex-wife from Mexico. Lemus became furious and hit Perez. He told her to calm down and further told her that if she did not calm down, he would slap her. He grabbed her hands so she would not hit him. Lemus dared Perez to slap her and he did. Lemus told him she would get an abortion and he told her that she was going to get in trouble because "it was not right what she was going to do." Perez said that the "trouble" he was referring to was "[m]ainly religious" and further stated he did not threaten to harm Lemus if she had an abortion.

## PROCEDURAL HISTORY

Perez was charged in an information with one count of assault with a semiautomatic firearm in violation of section 245, subdivision (b) (count 1); two counts of domestic battery with corporal injury in violation of section 273.5, subdivision (a) (counts 2 and 5); two counts of criminal threats in violation of section 422 (counts 3 and 6); and possession of a firearm by a felon in violation of section 12021, subdivision (a)(1) (count 4). The information alleged that Perez personally used a deadly weapon (a shovel), within the meaning of sections 12022, subdivision (b)(1) and 1192.7, in the commission of count 6. The information further alleged that Perez personally used a firearm, within the meaning of sections 12022.5, subdivision (a), 1192.7, and 667.5, in the commission of counts 1 and 3.

3

The jury found Perez guilty of counts 2 through 6 and found true the enhancement allegation that Perez personally used a dangerous and deadly weapon, within the meaning of section 12022, subdivision (b)(1), in the commission of count 6. The jury was unable to reach a verdict on count 1 or on the personal use of a firearm enhancement allegation as to count 3; the trial court declared a mistrial as to count 1 and the enhancement allegation as to count 3. The trial court imposed a total prison term of four years. Perez appealed.

## DISCUSSION

Perez contends his conviction for making a criminal threat, charged as count 3 in the information, is not supported by substantial evidence because insufficient evidence showed his threat was "so unconditional" as to convey a gravity of purpose and an immediate prospect of execution. Perez's argument lacks merit.

### I.

*Section 422 and Applicable Standard of Review*

To prove a violation of section 422, the prosecution must establish "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate

4

family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]" (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)[1]

"When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] . . . We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility. [Citation.]" (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)


II.

*Substantial Evidence Showed Perez's Threat That Lemus Would Be in Trouble If She Lost the Baby Was Sufficiently Unconditional to Convey a Gravity of Purpose and an Immediate Prospect of Its Execution.*

"'To constitute a criminal threat, a communication need not be *absolutely* unequivocal, unconditional, immediate, and specific. The statute includes the qualifier

---

[1] Section 422, subdivision (a) provides: "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

5

"so" unequivocal, etc., which establishes that the test is whether, in light of the surrounding circumstances, the communication was *sufficiently* unequivocal, unconditional, immediate, and specific as to convey to the victim a gravity of purpose and immediate prospect of execution.' [Citation.]" (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1433.) "'[I]t is the circumstances under which the threat is made that give meaning to the actual words used. Even an ambiguous statement may be a basis for a violation of section 422.' [Citation.] The jury is 'free to interpret the words spoken from all of the surrounding circumstances of the case.' [Citation.]" (*Ibid*.; *People v. Bolin* (1998) 18 Cal.4th 297, 339 [the term "unconditional" in section 422 "'was not meant to prohibit prosecution of all threats involving an "if" clause, but only to prohibit prosecution based on threats whose conditions precluded them from conveying a gravity of purpose and imminent prospect of execution'"].)

Although section 422 "also requires the threat to convey "'a gravity of purpose and an immediate prospect of execution of the threat,'" it 'does not require an immediate ability to carry out the threat. [Citation.]' [Citations.] 'The "immediate *prospect* of execution" in the context of a conditional threat is obviously to be distinguished from those cases dealing with threats of immediate harm, recognized at the very moment of the threat, such as those which support a defense of duress or necessity. [Citations.]' [Citation.] 'How are we to understand the requirement that the prospect of execution be immediate, when, as we have seen, threats often have by their very nature some aspect of conditionality: A threat is made to convince the victim to do something "or else." . . . [W]e understand the word "immediate" to mean that degree of seriousness and imminence which is understood by the victim to be attached to the *future prospect* of the threat being carried out, should the conditions not be met.' [Citation.]" (*People v. Wilson* (2010) 186 Cal.App.4th 789, 807.) Furthermore, "'[i]t is clear that the nature of the threat cannot be determined only at face value. Section 422 demands that the purported threat be examined "on its face and under the circumstances in which it was

6

made." The surrounding circumstances must be examined to determine if the threat is real and genuine, a true threat,' and such threats must be 'judged in their context.' [Citations.] '[Section 422] does not concentrate on the precise words of the threat. Instead, the statute focuses on the effect of the threat on the victim, to wit, communication of a gravity of purpose and immediate prospect of execution of the threat. These impressions are as surely conveyed to a victim when the threatened harm is conditioned on an occurrence guaranteed to happen as when the threat is absolutely unconditional.' [Citation.]" (*Ibid.*)

Substantial evidence showed Perez's threat was sufficiently unconditional to convey to Lemus a gravity of purpose and an immediate prospect of execution of the threat. Perez's threat to Lemus that she would be in trouble if she lost the baby was made in the context of Perez having just beaten Lemus by pushing her, slapping her face several times, pulling her hair, and striking her with the belt he had been wearing. Perez's threat was in response to the seven-month pregnant Lemus vomiting in the course of the beating. Reacting to Lemus's vomiting as potentially reflecting trouble with the pregnancy, Perez struck her in the head with the grip of a gun and held the gun to her head. In this context, he told her she would be "in trouble" if she lost the baby.

A reasonable jury could certainly find that, under the circumstances, the "trouble," referred to by Perez, constituted his infliction of at least great bodily injury on Lemus. Indeed, he was armed with a gun pointing at her and had just committed violence against her. Much more than substantial evidence showed Perez's threat was sufficiently unconditional and his conduct amply demonstrated a gravity of purpose and immediate prospect of execution of his threat. Accordingly, substantial evidence supported the conviction under count 3.

7

**DISPOSITION**

The judgment is affirmed.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


IKOLA, J.