Filed 9/15/15  P. v. Godoy CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B256013 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA127686) |
| v. | |
| ROGELIO ANGEL GODOY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles, Gary Tanaka, Judge.  Affirmed with directions.

Benjamin Owens for Defendant and Appellant, Rogelio Angel Godoy.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell and William H. Shin, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Rogelio Godoy appeals from his conviction after trial by jury on two counts of criminal threats. Godoy asserts that the trial court erred by allowing the introduction of evidence concerning his gang affiliation, and by imposing certain fines. We agree that the fines must be corrected, and otherwise affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Godoy was charged with corporal injury to a cohabitant (Pen. Code, § 273.5, subd. (a)(Count 1)[1] and criminal threats (§ 422, subd. (a)(Counts 2 and 3.) Personal use of a weapon was alleged as to Count One, and a prior conviction of a serious and violent felony (§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)), a prior serious felony conviction (§ 667, subd, (a)(i) and four prior prison terms (§ 667.5, subd. (b).) were also alleged. The case was tried to the jury, and, in November, 2013, the jury returned verdicts of guilty on Counts 2 and 3. The court declared a mistrial as to Count 1. In March, 2014, Godoy admitted the prior conviction allegations. The court sentenced Godoy to a term of 14 years, four months, and ordered, among other fines and fees, a $300 restitution fine (§ 1202.4, subd. (b), imposing and suspending an equal parole revocation fine (§ 1202.45).)

## TRIAL TESTIMONY[2]

### Helen Barrera

Helen Barrera identified the defendant as her daughter, Gina Morales's, boyfriend, indicating he used the name Little Raskal.[3] She testified that she believed the defendant

---

**1** All statutory references, unless otherwise noted, are to the Penal Code.

**2** Evidence not directly relevant to the issue on appeal has been omitted, including prior physical disputes between Morales and Godoy. Desiree Morales, Gina Morales's sister, testified to an earlier incident between her sister and Godoy, as did Deputy Lopez and Officer Dumster. Elsy Turcios, who had previously been in a relationship with Godoy, testified to an incident of physical violence in 2002. Gail Pincus testified as an expert on battered woman's syndrome.

**3** She described a tattoo on her daughter's chest as "Little Raskal, 18th Street."

was affiliated with the 18th Street gang, based on his tattoos, and markings on his belongings; she further indicated that, at a time when he was staying in her house, he had a monitor on his leg and was visited by his parole officer.

Barrera described the events of October 17, 2012, when the defendant came to her house in the early evening; she, her son, and Gina were present. She testified that she told Godoy "what the fuck are you doing here? You're not welcome here" and that he responded "Fuck you, whore. Give me my fucking shit. I'm coming back to kill you bitches." Godoy then turned to leave, with his hand at his pocket; it appeared to Barrera that he had a gun in his pocket. Godoy broke two windows as he left. Barrera testified that she was afraid because she was aware Godoy had beaten her daughter previously, and because of his gang affiliation and use of guns. She was also aware that Godoy had beaten, and held at gunpoint, a prior girlfriend. Barrera called 911 and reported the events.

Godoy returned to Barrera's house at 3 a.m.; she was frightened at that time because he had said he was coming back to kill them. Barrera called 911 a second time.

Barrera testified that she had been convicted of two felony offenses, the last in 1994. She also testified that she had a tattoo on her hand saying 18th Street, and that the father of her daughters was an 18th Street member.

Gina Morales

Gina Morales testified that Godoy, also known as Little Raskal, had been her boyfriend since January, 2012. She knew him to be a member of the 18th Street gang; she also "hung around" with that gang and was a gang member.

On the evening of October 17, 2012, she was at her mother's house, when Godoy knocked at the door. He asked to speak with her mother; her mother responded with profanity and told him to leave; as he was leaving, she heard the window break. She denied that defendant made any threat. After her mother called the police, and they arrived, she told them that Godoy had threatened to kill them because her mother gave her a look; she was not afraid of Godoy.

<u>Christopher Orneles</u>

Officer Christopher Orneles received a radio call on the evening of October 17, 2012, and responded to Barrera's house. He spoke to Barrera and Morales. Barrera, who was afraid, reported what defendant had said and done. Morales also appeared afraid, based on her demeanor and her statements, and reported the same events as had her mother. Morales also told Orneles that Godoy was an 18th Street gang member, and was on parole.

## DISCUSSION

1. Evidence of Gang Membership Was Properly Admitted at Trial

Defendant asserts that the court erred in permitting the jury to hear evidence of his gang membership; he argues that it was not relevant to the issues at trial, was cumulative in light of the other evidence introduced to establish fear by the victims, and was prejudicial.

During pretrial proceedings, defendant objected to Barrera's statements in her initial 911 call concerning both his parole and gang status. The court conducted an extensive Evidence Code section 402 hearing on this issue, and allowed the testimony on the issue of Barrera's fear. Both the prosecution and the defense discussed the issue in their opening statements; there was testimony as to gang membership from Barrera, Morales, Orneles, and the domestic violence expert at trial, and the prosecutor discussed it again in closing argument.

We review the admission of this evidence for abuse of discretion. (*People v. Gonzalez* (2012) 210 Cal.App.4th 724, 737 [standard of review for admission of gang evidence under Evidence Code section 352 is abuse of discretion]; *People v. Avitia* (2005) 127 Cal.App.4th 185, 193 [abuse of discretion to admit gang evidence where no gang allegations and evidence not relevant to material issue in the case].)

4

A.  The Evidence Was Relevant to Prove Fear

Defendant was convicted on two counts of criminal threats.  That crime, set forth in section 422[4], has five elements: a willful threat of "a crime which will result in death or great bodily injury"; the specific intent that the statement be taken as a threat; a threat that is "so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution"; a threat that actually causes the person threatened "to be in sustained fear for his or her own safety or for his or her immediate family's safety"; and fear that is "reasonable" under the circumstances.  (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228, quoting statute.)

The evidence of defendant's gang membership was admitted for the limited purpose of demonstrating the basis for Barrera's fear, a critical element of the proof required for conviction.  As Barrera's testimony demonstrated, a substantial basis for her fear was her knowledge of defendant's gang membership, as well as the concern that he might be assisted in carrying out his threats by his fellow gang members.  The challenged evidence was directly relevant to the issues to be decided by the jury.

B.  The Trial Court Carefully Scrutinized The Evidence

"We have recognized that admission of evidence of a criminal defendant's gang membership creates a risk the jury will improperly infer the defendant has a criminal disposition and is therefore guilty of the offense charged.  (*People v. Champion* (1995) 9 Cal.4th 879, 922 [39 Cal.Rptr.2d 547, 891 P.2d 93], citing *People v. Pinholster* (1992)

---

[4]    "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

5

1 Cal.4th 865, 945 [4 Cal.Rptr.2d 765, 824 P.2d 571].)  As defendant points out, evidence of a defendant's criminal disposition is inadmissible to prove he committed a specific criminal act.  (Evid. Code, § 1101.)  Moreover, even where gang membership is relevant, because it may have a highly inflammatory impact on the jury, trial courts should carefully scrutinize such evidence before admitting it.  (*People v. Champion*, *supra*, 9 Cal.4th at p. 922.)"  (*People v. Williams* (1997) 16 Cal.4th 153, 193.)  See also *People v. Albarran* (2007) 149 Cal.App.4th 214, 223 ["evidence of gang membership and activity is admissible if it is logically relevant to some material issue in the case, other than character evidence, is not more prejudicial than probative and is not cumulative.  [Citation.]  Consequently, gang evidence may be relevant to establish the defendants' motive, intent, or some fact concerning the charged offense other than criminal propensity as long as the probative value of the evidence outweighs its prejudicial effect."].

Because the evidence in question was relevant to a material issue in the case, it had probative value on its face.  Proceeding to the next step, the trial court carefully considered the potential for prejudice in pretrial proceedings.  That hearing took place over the course of 2 days and fully explored with Barrera the basis for her knowledge of the defendant's gang affiliation and the impact of that knowledge on her state of mind when the threats were made.  Both parties had the opportunity to argue the issue fully.  The trial court initially expressed an explicit concern that the evidence would be unduly prejudicial, but after hearing the testimony and the argument of counsel, the trial court overruled the Evidence Code section 352 objection, finding the probative value of the evidence to be highly significant, and not outweighed by the prejudicial effect.  We find no abuse of discretion in that determination based on the legal issues before the court and the statements of the witness.[5]

---

[5]  Moreover, any potential prejudicial effect of the testimony in this case must be considered in light of the fact that both victims testified openly to their own affiliation with the gang.  As a result, the inflammatory impact and opprobrious implications of that

6

The final issue to be determined by a trial court in this situation is whether the gang evidence is cumulative of other evidence. The pretrial testimony by Barrera established that defendant's gang affiliation was a critical element of her fear. As a result, the evidence was necessary to establish that factor.

2.      The Restitution and Parole Revocation Fines Must Be Reduced

Appellant asserts that the trial court, in setting the restitution and parole revocation fines pursuant to sections 1202.4, subdivision (b)(1) and 1202.45, subdivision (a) indicated that it was imposing the minimum fine permitted by statute. However, the minimum fine applicable at the time of the charged offenses was $240, not the $300 sum imposed by the court. Respondent concedes that the fines should be $240, and we order the abstract of judgment corrected accordingly.

## DISPOSITION

The restitution and parole revocation fines imposed pursuant to Penal Code sections 1202.4, subdivision (b)(1) and 1202.45, subdivision (a) are reduced to $240, and the abstract of judgment shall be amended to reflect this change. The superior court is ordered to forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

ZELON, J.

We concur:

PERLUSS, P. J.                          SEGAL, J.

---

evidence are lessened because all of the key figures in the case belonged to, or were affiliated with, the same gang.

7