Filed 10/4/13  P. v. Umstead CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056259 |
| v. | (Super.Ct.No. SWF1100485) |
| WILLIAM THOMAS UMSTEAD, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jerry E. Johnson, Judge. (Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to art. VI, § 6, of the Cal. Const.)  Affirmed.

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina, and Sean M. Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

1

I

INTRODUCTION

Defendant William Thomas Umstead appeals from judgment entered following jury convictions for committing corporal injury on the mother of his child (Pen. Code, § 273.5, subd. (e)(1)[1]; count 1), and making criminal threats (§ 422; count 2). The jury also found true that defendant had two prior prison terms (§ 667.5, subd. (b)), had been convicted of a prior serious felony (§ 667, subd. (a)), and had a strike prior (§§ 667, subds. (c) & (e)(1), 1170.12). The trial court sentenced defendant to 11 years in prison.

Defendant contends there was insufficient evidence to support his conviction for making unlawful criminal threats because the alleged threat was a conditional statement. We conclude the evidence was sufficient to establish the threat was unequivocal, unconditional, immediate, and specific. The judgment is affirmed.

II

FACTS

Defendant and Jane Doe ended their nine-year relationship and separated about a week before the events of February 20, 2011. The couple and Doe's two daughters were living with defendant's mother and step-father, George Amador. The daughters were seven and eight years old. Defendant was the biological father of one of the daughters. Father moved out and Doe and her daughters remained in defendant's mother and step-father's home.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

2

At around 7:30 a.m., on February 20, 2011, defendant entered his mother and step-father's home and yelled, "I'm taking the kids to church." Doe asked defendant how he planned on getting the girls to church since he did not have a car. Defendant became angry and paced back and forth. After about five minutes, he accused Doe of being on drugs. Doe had a history of drug abuse. She told defendant she was not on drugs and told defendant he was on drugs. Defendant started yelling. He accused her of cheating and cast a multitude of insulting, crude aspersions upon Doe in front of her two daughters. Doe told her daughters to go to their room because she did not want them to hear what defendant was saying and told defendant to stop saying such things about her. Defendant replied that he would not stop because what he was saying was the truth.

Amador asked defendant to go outside and calm down. After talking with Amador outside for 15 or 20 minutes, defendant reentered the house and told Doe he was taking her daughters to church in Amador's truck. Doe refused to allow him to do so. Defendant insisted. Defendant alternated between being calm and yelling at Doe.

Eventually, defendant stopped talking about the girls and began accusing Doe again of cheating on him and using drugs. Defendant stood in the bathroom doorway while Doe was in the bathroom. Defendant got close to Doe and said, "I should just fuck you up now." Doe told him to leave her alone. Defendant leaned about six inches from her, and yelled at her. Doe did not move. Defendant leaned back his head and then forcefully head-butted Doe. Amador witnessed the incident. Defendant's forehead started bleeding.

3

Doe said to defendant, "Are you done now?" Doe initially testified that defendant loudly replied, "I know I'm going to prison, so I should just finish the job, kill everybody here and burn down the house." Later, Doe testified that defendant threatened to "kill us all in the house and burn the house down." Doe testified she was scared "because [defendant had] tried it before."

Amador testified that he heard defendant say he was "going to burn down the house and kill everybody." Amador said he could not remember if defendant said, "I should" burn down the house and kill everyone. Later, Amador testified that, in addition to saying, in effect, that he was going to burn the house down and kill everyone, defendant said he was going back to prison so it did not matter; "So he would just kill everyone." Amador was nervous about the entire situation. Defendant was very upset and outraged. He started "punching his head" and hitting and "slapping" himself. Defendant screamed and yelled, "You haven't seen crazy yet." Amador was more concerned about Doe and her children than scared for himself and others in the house.

Amador told Doe to leave with her children. Defendant grabbed the two girls and stood in front of them, yelling, "I don't want you growing up to be like your mom, being a whore like your mom, and spreading your legs open for any man that comes by." Defendant told Doe's daughter who was not fathered by him, "[y]ou're not my daughter, and I hate you, and I can't stand seeing you." Amador grabbed the girls and drove Doe and the girls to a nearby store parking lot. Doe called the police. As they were waiting for the police, Amador saw defendant walking up the street.

4

Doe told the 911 dispatcher that defendant had just "head-butted" her and "[h]e said he was gonna kill [Doe]." Doe said she escaped from him but he was walking toward her. The dispatcher told Doe to stay away from defendant. Doe said she was trying. Shortly thereafter, Doe met police officers in the store parking lot and then went to the hospital.

Police Detective Spencer Parker testified that on February 20, 2011, at 9:45 a.m., he responded to a dispatch call. He contacted the victim, Doe, at the hospital. She was waiting to be treated. She was very upset, crying, and sobbing. Parker described her as looking "terrible." He noticed "a huge contusion over her left eye." Her eye was swollen shut and purple. It looked painful. Doe also had bruise marks in the shape of fingerprints along her left bicep and upper arm. Later, on March 2, 2011, Doe met with police investigators. Her eye was still badly bruised and swollen. Her injuries lasted about three weeks.

*Prior Domestic Violence Incidents*

Prior to the charged incident, defendant committed several other acts of domestic violence against Doe. Less than a week before the charged offense, on February 16, 2011, defendant and Doe argued over money at defendant's mother's house. Defendant also accused Doe of having an affair, and called her a "fucking bitch and a whore." Defendant paced back and forth, and hit himself in the head. Defendant then head-butted Doe, not quite as hard as on February 20, 2011, but hard enough to leave a bump on Doe's forehead.

5

About five years before, on August 23, 2006, defendant punched Doe in the face multiple times, causing a black eye, and threatened to kill her and the girls. Doe tried to call 911 but defendant pulled the telephone cord out of the wall. Defendant then choked Doe and put a pillow over her face in an attempt to smother her. She "felt like [she] was going to die." On December 5, 2006, defendant was convicted of spousal abuse and making criminal threats. After defendant was released from prison, Doe reunited with defendant because she "thought he changed." Defendant also had a 2002 conviction for receiving a stolen vehicle.

## III

### SUFFICIENCY OF EVIDENCE OF MAKING CRIMINAL THREATS

Defendant contends there was insufficient evidence to support his conviction for making criminal threats (§ 422; count 2). We disagree.

In order to prove the offense of making criminal threats in violation of section 422, the following elements must be established: (1) The defendant willfully threatened to commit a crime which would result in death or great bodily injury to another person, (2) the defendant made the threat with the specific intent that the statement was to be taken as a threat, even if there was no intent of actually carrying it out, (3) the threat was on its face and under the circumstances in which it was made so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety, and (5) the

6

threatened person's fear was reasonable under the circumstances. (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Defendant challenges the sufficiency of evidence as to the third element. He argues that his statement that he "should just finish the job," kill everybody and burn down the house, was not an unconditional, unequivocal threat. Defendant asserts the only reasonable inference the jury could make was that this was the only threat defendant made, and it was not "unequivocal, unconditional, immediate, and specific" (§ 422) because it was prefaced with the word "should." This use of the word, "should," defendant argues, signified that commission of the threatened acts was uncertain or conditional because such acts might not occur. The fact defendant ultimately did not commit the threatened acts by no means proved that his threat was equivocal or conditional when made, particularly since the evidence shows Doe, Amador, and the girls immediately left after defendant made the threat, and shortly thereafter, defendant was arrested.

Likewise, the absence of any weapons in the house does not establish that defendant did not make a criminal threat under section 422. Certainly, defendant was capable of carrying out his threat without a weapon. A rational trier of fact could have reasonably found beyond a reasonable doubt, based on the evidence as a whole, that defendant made an "unequivocal, unconditional, immediate, and specific" threat (§ 422) by stating that he was going to kill Doe and everyone else in the house, and burn down the house.

7

Although Doe initially testified that defendant said that he "*should* just finish the job, kill everybody here and burn down the house" (italics added), there was substantial evidence that he did not actually use the word "should" when he made the threat. Rather, he stated unequivocally that he was going to kill Doe and others in the house, and burn down the house. Later in the trial, Doe testified that defendant threatened to "kill us all in the house and burn the house down." Doe testified she feared he would do this "because [defendant had] tried it before."

In addition, Amador testified that he also heard defendant say he was "going to burn down the house and kill everybody." Amador testified he feared defendant would carry out his threat because defendant said he was going back to prison so it did not matter; "So he would just kill everyone."

Even if defendant used the word, "should" when making the threat, the evidence was sufficient to support the finding that the threat qualified as a criminal threat under section 422. "[T]he reference to an 'unconditional' threat in section 422 is not absolute. . . . '[U]se of the word "unconditional" was not meant to prohibit prosecution of all threats involving an "if" clause, but only to prohibit prosecution based on threats whose conditions precluded them from conveying a gravity of purpose and imminent prospect of execution.' . . . 'Most threats are conditional; they are designed to accomplish something; the threatener hopes that they *will* accomplish it, so that he won't have to carry out the threats.'" (*People v. Bolin* (1998) 18 Cal.4th 297, 339 (*Bolin*).) Under section 422, "'unequivocality, unconditionality, immediacy and specificity are not absolutely mandated, but must be sufficiently present in the threat and surrounding

8

circumstances to convey gravity of purpose and immediate prospect of execution to the victim.' [Citation.] . . . '[T]here are different degrees of unconditionality. A threat which may appear conditional on its face can be unconditional under the circumstances. . . . [¶] Language creating an apparent condition cannot save the threatener from conviction when the condition is illusory, given the reality of the circumstances surrounding the threat. A seemingly conditional threat contingent on an act highly likely to occur may convey to the victim a gravity of purpose and immediate prospect of execution.' [Citation.]" (*Bolin,* at p. 340.)

Here, even assuming defendant prefaced the threat with the word, "should," the threat conveyed "a gravity of purpose and an immediate prospect of execution" (*Bolin, supra,* 18 Cal.4th at p. 340), sufficient to constitute a criminal threat under section 422. This is apparent from Amador's reaction to defendant's threat. Amador testified he was shocked and nervous about the entire situation. Defendant was very upset and outraged. He was "punching his head" and hitting and "slapping" himself. Defendant was screaming and yelled, "You haven't seen crazy yet." Defendant's behavior before and after defendant made the threat, established that at the time he made the threat, he was capable of carrying out the threat, particularly since defendant said he believed he had nothing to lose because he was going to prison anyway. Defendant was enraged at Doe and emotionally volatile. This conveyed a gravity and immediacy of his threat, as demonstrated by evidence that, because Amador was very concerned about Doe and her children, he and Doe fled with the girls, and Doe called 911.

The totality of the evidence was more than sufficient to support a reasonable finding that, regardless of whether defendant actually used the word, "should," defendant made an "unequivocal, unconditional, immediate, and specific" criminal threat in violation of section 422.  Even if the evidence arguably supported other inferences, such evidence was insufficient to undermine the jury's verdict.  (*People v. Farnam* (2002) 28 Cal.4th 107, 143.)

## IV

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
J.

We concur:


HOLLENHORST
Acting P. J.


KING
J.