Filed 7/12/16  P. v. Swinderman CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JAMES EDWARD SWINDERMAN, <br><br> Defendant and Appellant. | F070286 <br><br> (Super. Ct. No. CRM032803) <br><br><br> **OPINION** |

---

**THE COURT**[*]

APPEAL from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Benjamin Owens, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Stephen G. Herndon and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Levy, Acting P.J., Kane, J. and Detjen, J.

James Edward Swinderman (defendant) was convicted of making a criminal threat (Pen. Code, § 422)[1] to David Moen, who was dating defendant's estranged wife. Defendant argues the trial court erred because it failed to instruct the jury on the lesser included offense of attempted criminal threat. We affirm the judgment concluding no error occurred, and even if error occurred it was harmless.

## FACTUAL AND PROCEDURAL SUMMARY

On March 4, 2013, defendant pled no contest to one count of making a criminal threat (§ 422) for an incident that occurred on February 15, 2013. Although the complaint does not identify the victim, the trial court entered an order precluding defendant from coming within 100 yards of Moen, his family, or his residence. Defendant was placed on felony probation. A no contact order was included in the terms of probation which precluded defendant from having any contact with his estranged wife Misty Swinderman, Moen, and Moen's family.

In 2014, an information was filed charging defendant with making a criminal threat for an incident that occurred on March 27, 2014. His prior conviction for making a criminal threat was alleged as both a prior strike conviction pursuant to section 667, subdivisions (b) through (i), and a prior serious felony conviction pursuant to section 667, subdivision (a)(1).

The trial consisted of only four witnesses. Merced Police Officer James Lodwick responded to the 2013 incident. He met with Moen down the street from Moen's house. Lodwick checked Moen's house and discovered the light bulb from the porch light had been removed, and the front security screen door was open. No one was present at the residence. Lodwick also spoke with Misty Swinderman, and provided assistance in obtaining an emergency protective order prohibiting defendant from having any contact with her.

---

[1] All statutory references are to the Penal Code.

Merced Police Officer Vince Sapien responded to the 2014 incident. Moen contacted the police because of a voice mail that had been left on his phone. Sapien made a copy of the voice mail and it was played for the jury. Sapien recognized the voice of the caller as being defendant. Moen seemed nervous and afraid when he spoke with Sapien.

Moen testified that at the time of trial, he had been living with Misty Swinderman for over one year. Misty Swinderman had been separated from defendant for three to four years. He knew both defendant and Misty Swinderman for over 20 years as they were high school friends.

In March 2014, he received a phone call which he did not answer because he did not recognize the number. When he listened to the voice mail message he recognized the caller as defendant. The message stated, "Hey, is this Dave Moen[?] You're a bitch, and I'm fucking going to kill you. All right, bitch. I hate your ass. You're gone, dog. You're gone." When Moen listened to the message he did not feel safe because he did not know what defendant was capable of doing. Moen felt the voice mail message was an immediate threat to his safety. His children are not allowed to open the door to the house and they have been instructed that, if they see defendant, they are to come inside the house. Moen keeps the doors and windows to his home shut. Moen called the police the day after he received the message. Moen testified he wanted the threats to stop so he would not have to worry every time he leaves his residence.

Moen also described the 2013 incident. He and Misty Swinderman were in a department store when they were approached by defendant. Defendant pushed Moen and then yelled at Misty Swinderman. Store security made defendant leave and the police were called. Later that day defendant called Moen and threatened to kill him. When Moen arrived at his house that night he noticed the porch light was out, and saw defendant and two of defendant's friends sitting in a vehicle in front of his house. Moen

3.

had his two sons with him, so he drove past his house, stopped and called the police. Moen found the porch light bulb on the windshield of his vehicle.

On cross-examination Moen stated he was worried about what defendant would do after the incident at the department store because he did not know what defendant was capable of doing. Moen told Lodwick, "Man to man, I'm not afraid."

Moen explained what he meant on redirect. Moen was not afraid of defendant should they have a fistfight without weapons involved. But he was worried "[b]ecause you never know what somebody is capable of, you know. Like just figuratively speaking just like -- I don't know. It's tough. Once somebody threatens your life, that is different than just getting into a little fistfight. Once someone threatens to kill you and you don't know whether they're going to do it or not and you have to worry every single day you leave your house. And every time you have your kids with you, you have to worry if something is going to happen. And I worry for Misty and the kids and me."

Misty Swinderman testified in a manner consistent with Moen and Lodwick. She stated that defendant threatened to kill both Moen and herself in the 2013 incident. She also confirmed that Moen worries constantly because he was threatened.

After deliberating for approximately one hour, the jury found defendant guilty of making a criminal threat, and found the prior conviction enhancement true. Defendant was sentenced to the low term of 16 months, doubled because of the strike prior for a total of 32 months, plus five years for the serious felony enhancement, for a total prison term of seven years and eight months.[2]

## DISCUSSION

Defendant argues the trial court erred because it failed to instruct the jury on the lesser included offense of attempted criminal threat.

---

[2] Defendant had been sentenced to probation as a result of the 2013 incident. This conviction resulted in a violation of his probation, and he was sentenced to a concurrent term of one year and four months for the 2013 conviction.

4.

The jury was instructed the elements of the crime of making a criminal threat are (1) defendant threatened to kill Moen, (2) the threat was made orally, (3) defendant intended his statement to be understood as a threat, (4) the threat was so clear, immediate, unconditional, and specific that Moen understood defendant had a serious intention and there was an immediate prospect the threat would be carried out, (5) the threat actually caused Moen to be in sustained fear for his own safety or for the safety of his immediate family, and (6) Moen's fear was reasonable under the circumstances. (CALCRIM No. 1300; *People v. Toledo* (2001) 26 Cal.4th 221, 227-228 (*Toledo*).)

Defendant focuses on the fifth element, whether Moen was in fear for his own safety or for the safety of his immediate family. Defendant argues there was sufficient evidence that Moen was not actually afraid, and therefore the jury could have concluded defendant did not successfully make a criminal threat, but only attempted to make a criminal threat.[3] (*Toledo*, *supra*, 26 Cal.4th at pp. 230-231.)

The People argue there was not sufficient evidence that the crime committed was less than a criminal threat, and therefore the trial court did not have a duty to instruct on the crime of attempted criminal threat. (*Cruz*, *supra*, 44 Cal.4th at p. 664 [no obligation to instruct on lesser included offense when there is no evidence the offense committed was less than that charged].)

Defendant's argument focuses on Moen's testimony that he was not afraid of defendant if the confrontation was "man to man," i.e., the two engaged in a fair fistfight without weapons. While Moen did testify consistent with this argument, we conclude this testimony was not sufficient to require an instruction on attempted criminal threats because the argument takes the statement out of context.

---

**3** Defendant did not request an instruction on attempted criminal threats in the trial court, but relies on the trial court's sua sponte obligation to instruct on the general principles of law applicable to the case. (*People v. Cruz* (2008) 44 Cal.4th 636, 664 (*Cruz*).)

Defendant's argument focuses on only a small portion of the testimony. It ignores the fact that defendant's threat did not challenge Moen to a fair fistfight between the two, but instead threatened to kill Moen. Moen testified this threat caused him to worry not only about his own safety, but the safety of his children. A fair reading of Moen's testimony suggested he was afraid defendant would attack him with a weapon, or with the assistance of other men, rendering any fight unfair. Defendant's act of vandalizing Moen's home and then waiting with two friends until Moen came home at night not only explained Moen's concern, but also explained his actual fear of defendant.

Defendant also ignores the fact that his threat caused Moen to be in fear for the safety of his children, since, as Moen testified, he did not know which horrific acts defendant might commit. Many possible methods of killing Moen could also put his children at risk, such as a shooting, a bomb, or staged auto accident. Defendant's actions caused Moen actual and justifiable fear that defendant would carry out his threat in a manner that would harm not only himself but also his family. Simply stated, there was insufficient evidence to permit the jury to conclude defendant's actions amounted to anything less than a criminal threat.

Even if we assume, arguendo, the trial court erred, we would affirm the judgment because any possible error was harmless. (Cal. Const., art. VI, § 13 [error in instructing the jury requires reversal only if the error resulted in a miscarriage of justice]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [miscarriage of justice occurs if it is reasonably probable a result more favorable to the defendant would have been reached in the absence of error].)

The evidence in this case was overwhelming on every element of the crime, even Moen's actual fear for his own safety and the safety of his family. Moen's testimony established his fear of defendant. The portion of the testimony on which defendant relies is taken out of context, as Moen explained he was concerned because he did not know what actions defendant might take, or how far defendant would go to carry out his threat.

That the jury deliberated less than one hour confirms the overwhelming nature of the evidence, and the lack of prejudice if an error occurred.

## DISPOSITION

The judgment is affirmed.