Filed 9/8/16  In re Dennis V. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re DENNIS V., a Person Coming Under the Juvenile Court Law. | B265234 |
| PEOPLE OF THE STATE OF CALIFORNIA, | (Los Angeles County Super. Ct. No. MJ22814) |
| Plaintiff and Respondent, | |
| v. | |
| DENNIS V., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy S. Pogue, Temporary Judge.[1]  Affirmed.

Torres & Torres and Tonja R. Torres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Russell A. Lehman, Deputy Attorneys General, for Plaintiff and Respondent.

---

[1]    Pursuant to article VI, section 21 of the California Constitution.

Following a contested hearing, the juvenile court sustained a Welfare and Institutions Code section 602 petition, finding minor Dennis V. (Dennis) had made criminal threats in violation of Penal Code section 422, subdivision (a).[2] On appeal, Dennis contends the order sustaining the petition was not supported by substantial evidence. For the reasons discussed below, we reject the contention and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.

### Petition; Contested Hearing

On October 24, 2014, a petition was filed under Welfare and Institutions Code section 602, alleging that Dennis had violated section 422, subdivision (a) (criminal threats). At a contested hearing, the evidence showed the following:

*A.     Prosecution Case*

On August 28, 2014, at about 2:00 a.m., 22-year-old John Colin (Colin) was walking home alone from his girlfriend's house. Dennis, then 16 years old, and Mike G. (Mike), 17 years old, began walking behind Colin. Dennis and Mike asked Colin where he was going and whether he would buy them "some wraps from the 7-Eleven."[3] Colin responded "very minimally" and gave "basic responses" to their questions. Dennis then asked if he could use Colin's phone; Colin refused.

When Dennis and Mike neared Colin, Colin began to feel uneasy and reached into his pocket for his cell phone. As he did so, Dennis asked Colin: "Why are you reaching into your pocket? You don't know if we have a knife or a gun." Dennis added: "As a matter of fact, I do have a gun. It's a .22, black and small." Dennis then said either "I will use it to blow your head off" or "I could blow your head off right now if I wanted to."

---

[2]     All subsequent undesignated statutory references are to the Penal Code.

[3]     The juvenile court was told that "wraps" are cigars or cigar wrappers that are used to smoke marijuana.

Colin was "freaked out" by the threat. He crossed the street and called the sheriff's department. While he was on the phone with a sheriff's deputy, Colin saw that Dennis and Mike had continued to follow him. Mike asked Colin, "Why are you calling the cops?" There was then some communication between Dennis and Mike and "that's when all of a sudden [Mike] had hit me on the side of my face, and then I had fallen down, and they ran." Four or five minutes later, sheriff's deputies arrived; at that point, Colin "felt a bit safer that they were there, but I was still [shaken] up and scared."

Deputy Sheriff Cesar Vilanova responded to Colin's call at around 2:00 a.m. on August 28, 2014. Colin told the deputy that he had been punched and was reaching into his pocket for his phone when one of the individuals stated, "You don't know if I have a gun. You don't know if I have a knife . . . . As a matter of fact, I do have a gun. It's a .22, small and black, and I will use it to blow your head off." The deputy testified that Colin was so shaken up by the encounter that "[i]t was very difficult to get any words out of him. It took me a few minutes to [calm] him down. He was crying[,] very frantic. It was very hard for him to catch his breath." The deputy did not observe any injuries to Colin's face.

Within an hour of making contact with Colin, Deputy Vilanova spotted Dennis and Mike and asked them to stop. Dennis admitted that he had told Colin he had a "deuce deuce," a slang term for a .22-millimeter caliber handgun. Dennis also said he had asked to use Colin's cell phone, and he did not like Colin's demeanor or the response that he gave. Dennis said he ran away when he saw Colin on the phone with the police because he did not want to receive a citation for violating curfew.

B.    *Defense Case*

Dennis testified that he and Mike encountered Colin near Palmdale High School at about 2:00 a.m. on August 28, 2014. Dennis asked Colin how old he was and whether Colin could buy "wraps" or "blunt wraps" for him. He also asked if he could use Colin's cell phone. Colin refused both requests.

Dennis and Mike continued to follow Colin and saw him reach into his pocket. Dennis "thought [Colin] was gonna pull out . . . a weapon or something," so he said to

3

Colin, "Why are you reaching into your pocket?" "You never know what I might have." "I could have a deuce deuce right now." Dennis denied saying that the weapon was black or small or that he was going to shoot Colin, and also denied having a weapon at the time.

Dennis explained that he and Mike continued to follow Colin because they were concerned about "why he was on the phone and what he was [going] to do." Dennis did not think there was any reason to call the police, and he wanted to avoid the police because he was a minor and did not want to receive a curfew citation. When Mike realized Colin was calling the police, he became angry and punched Colin.

Dennis testified that he believed Colin was going to hurt him, but he admitted that he (Dennis) did not run away or call the police. He also admitted that Colin did not turn around to confront him, but instead continued to walk away. Dennis said it was never his intention to threaten Colin: "My intention was just for him to like not do anything to us because we didn't know what he had, either, and he was a grown man already. So that was my intention. We had no intention of hurting him or nothing like that." Dennis said he was fearful because "he was over 18, and I'm a minor. So that's a grown man already."

Investigator Ralph Bennett from the Los Angeles County Public Defender's office testified that he spoke to Colin by telephone on January 21, 2015, approximately five months after the incident. According to Bennett, "[t]here was no sign of distress" when he spoke with Colin. He said Colin "seemed quite normal" and "wasn't crying or anything of that nature." Bennett said Colin never provided a precise identification or description of the suspects, although he gave a description of their clothing and said one was taller than Colin.

## II.

### Decision

After the contested hearing, the juvenile court sustained the petition, finding as follows:

"[T]he court has listened to the evidence and observed all witnesses during their testimony. The court is referred to CALCRIM 1300, criminal threats, Penal Code section

4

422[,] subdivision (a), and the People have the burden of proving beyond a reasonable doubt the following six elements:

"1.     Minor unlawfully threatened to unlawfully kill or unlawfully cause great bodily injury to Mr. Colin.

"2.     Minor made the threat orally or in writing.

"3.     Minor intended that his statement be understood as a threat . . . .

"4.     The threat is so clear, immediate, unconditional, and specific that it communicated to Mr. Colin a serious intention and the immediate prospect that the threat would be carried out.

"5.     The threat actually caused Mr. Colin to be in sustained fear for his safety; and

"6.     Mr. Colin's fear was reasonable under the circumstances.

"In the comment section of CALCRIM 1300, it reminds the court that in deciding whether a threat was sufficiently clear, immediate, unconditional, and specific, consider the words themselves as well as the surrounding circumstances.

"Also, someone who intends that a statement be understood as a threat does not have to actually intend to carry out the threatened act.

"A sustained fear means fear for a period of time that is more than momentary, fleeting, or transitory.

"The court heard minor's testimony. He admitted that he did tell Mr. Colin that he had a deuce deuce, slang for a .22 caliber weapon. He did deny, however, that he made the statement that he would use it to blow the victim's head off.

"Minor did admit that he and his companion followed Mr. Colin. That . . . he did ask Mr. Colin if he would buy cigars for them. [¶] He did ask Mr. Colin if minor could use his phone, and when Mr. Colin put his hand in his pocket, that minor stated that he made some statements but denied making the statement that he threatened to blow the

5

victim's head off.  [¶]  During his interview with Deputy . . . Vilanova, minor did [not][4] admit that he made the statement, he threatened to blow the victim's head off.

"The court finds that based on the totality of the minor's testimony, that his testimony is not credible.  The court finds that Mr. Colin's testimony is credible. . . .

"The court, based on the totality of the circumstances, finds that the People have proved each of the elements of criminal threats beyond a reasonable doubt.  The petition filed October 24th, 2014[,] that alleges criminal threats in violation of Penal Code 422[,] subdivision (a), a felony, the court finds this to be true."

Subsequently, the court ordered Dennis placed in community camp for five to seven months, with a maximum confinement time of three years.

Dennis timely appealed.

## DISCUSSION

The sole contention on appeal is that insufficient evidence supported the juvenile court's finding that Dennis made a criminal threat in violation of section 422, subdivision (a).  We conclude that the juvenile court's finding was supported by substantial evidence, and thus we affirm.

Section 422, subdivision (a) provides:  "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement, made verbally, in writing, or by means of an electronic communication device, is to be taken as a threat, even if there is no intent of actually carrying it out, which, on its face and under the circumstances in which it is made, is so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat, and thereby causes that person reasonably to be in sustained fear for his or her

---

[4]      There appears to be a typographical error in the transcript.  Deputy Vilanova testified that Dennis did *not* say anything about blowing Colin's head off.  Presumably if Deputy Vilanova had testified that Dennis acknowledged he had threatened to blow Colin's head off, the juvenile court would have treated this as an admission, rather than concluding based on the totality of the testimony that Dennis was not credible.

own safety or for his or her immediate family's safety, shall be punished by imprisonment in the county jail not to exceed one year, or by imprisonment in the state prison."

Reiterating the language of the statute, our Supreme Court has stated that to prove a violation of section 422, "the prosecution must establish all of the following:  (1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat . . . was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances. [Citation.]"  (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

Dennis contends there was substantial evidence that he acted in lawful self-defense, and thus the juvenile court's finding that he violated section 422 is not supported by substantial evidence.  He urges:  "[T]he evidence was uncontroverted that [Dennis] threatened Colin only *after* Colin reached into his pocket for his phone without explaining what he was doing.  It was only then [Dennis] asked Colin why he was putting his hand into his pocket, followed by the statement he had a gun [and] would shoot Colin."  Thus, Dennis says, substantial evidence does not support the  juvenile court's true finding that he acted with the requisite felonious intent.

We do not agree that the juvenile court's finding of intent was not supported by the evidence.  Dennis appears to contend that the juvenile court could not reasonably have found that he violated section 422 because there was substantial evidence that he acted in reasonable self-defense.  In so suggesting, Dennis misapprehends our standard of review.  "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the [fact-

7

finder's] verdict. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) Stated differently, the question before an appellate court is whether the juvenile court reasonably could have concluded as it did—*not* whether the evidence might also reasonably be reconciled with a contrary finding. (*Id*. at p. 358 ["Where the circumstances reasonably justify the trier of fact's findings, a reviewing court's conclusion the circumstances might also reasonably be reconciled with a contrary finding does not warrant the judgment's reversal."].) We therefore consider whether there was substantial evidence to support the juvenile court's implicit conclusion that Dennis did *not* act in self-defense, rather than whether the record might have supported a finding that Dennis did so act.

For self-defense to apply, "one must *actually and reasonably* believe in the necessity of defending oneself from imminent danger of death or great bodily injury. [Citation.]" (*People v. Randle* (2005) 35 Cal.4th 987, 994, disapproved on other grounds in *People v. Chun* (2009) 45 Cal.4th 1172, 1201, italics added.) In the present case, the juvenile court reasonably concluded that Dennis did not act in self-defense.[5]

*First*, there was substantial evidence that Dennis did not *actually* believe that Colin posed an imminent danger to him. That evidence included testimony that Dennis and Mike followed Colin and initiated conversation with him, not the other way around; and that after Colin reached into his pocket—thus doing the very thing Dennis said caused him to fear for his safety—Dennis and Mike continued to follow him. Further, the evidence was undisputed that Dennis and Mike made no attempt either to get away from Colin or to call the police; instead, even after Colin crossed the street in an apparent attempt to get away from *them*, they continued to follow him and, ultimately, approached and assaulted him. Had Dennis—who assertedly was unarmed—genuinely believed that Colin had a weapon in his pocket, it is highly unlikely that he would have pursued Colin. The juvenile court reasonably concluded that Dennis's actions were inconsistent with fear for his life or safety.

---

[5]     We assume without deciding that self-defense can be a defense to a charge of making a criminal threat.

8

*Second*, there was also substantial evidence to support the conclusion that even had Dennis been in actual fear of Colin, such fear would not have been *reasonable*. Colin did not take any aggressive actions towards Dennis and Mike:  He did not threaten them verbally or physically, and when they approached him, he did not turn to face them, but instead attempted to walk away.

The juvenile court thus reasonably concluded that none of Colin's actions put Dennis in reasonable fear for his safety and, therefore, Dennis's threats to Colin were not made in reasonable self-defense.

## DISPOSITION

The order of the juvenile court declaring Dennis a ward of the court and placing him in the Camp Community Placement Program is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

LAVIN, J.

STRATTON, J.[*]

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9