Filed 7/12/21  P. v. Riley CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C089437 |
| Plaintiff and Respondent, | (Super. Ct. No. 18FE021988) |
| v. | |
| WOODROW CLIFTON RILEY, | |
| Defendant and Appellant. | |

Following a jury trial, defendant Woodrow Clifton Riley was found guilty of making criminal threats and admitted a prior strike allegation.  On appeal, he contends: (1) insufficient evidence supports his conviction for making criminal threats; (2) the trial court erred by not instructing on the lesser included offense of attempted criminal threats; and (3) the minute order for the sentencing hearing and the abstract of judgment must be amended to show the court awarded defendant 149 days of presentence custody credit, not 148 days.

1

We agree with defendant regarding the custody credits. We otherwise affirm the judgment.

FACTS AND HISTORY OF THE PROCEEDINGS

Defendant was charged with criminal threats in count one (Pen. Code, § 422 [statutory section citations that follow are found in the Penal Code, unless otherwise set forth]) and being a felon in possession of a firearm in count two (§ 29800, subd. (a)(1)). It was further alleged that defendant personally used a firearm in the commission of count one (§ 12022.5, subd. (a)) and that he had sustained a prior strike conviction (§§ 667, subds. (b)-(i) and 1170.12).

L.S. lived with her 17-year-old daughter, Z.W., and Z.W.'s two-year-old daughter. Z.W. had been dating defendant. L.S. had previously told both Z.W. and defendant that he was too old for her daughter and she did not want defendant in her home. When L.S. came home in the early morning hours on November 15, 2018, with some friends, she found defendant in her apartment with another man. L.S. woke up the other man, who was asleep on the couch, and told him to leave. L.S. then went upstairs to her daughter's bedroom and found defendant and Z.W. asleep in her bed. L.S. told defendant to leave, and he refused. L.S. became angry and went downstairs and picked up a golf club. When she returned, L.S. told defendant he had five seconds to leave her home. When defendant reached the front door, he turned around and told Z.W., who was at the top of the stairs, to bring him something. L.S. reached around defendant, opened the front door, and pushed him out with one hand and told him to get out of her house.

Once on the front porch, defendant turned and faced L.S. from a few feet away and told her, "You don't know who I am, don't push on me." L.S. took defendant's comment to mean that she did not know what he was capable of doing. In response, L.S. told him, "I am from the same streets you're from, you need not to be getting at nobody like that, I'm somebody's mother." Defendant stated he did not give a "F" and that he

2

was from "FAB." L.S. told defendant to get the "F" away from her porch. At that point, defendant was standing a few feet away and pulled out a 9-millimeter gun from his waistband. Defendant pointed the gun in the air, then at L.S., and said, "I'm FAB, I'll air this motherfucker out." L.S. understood defendant's comment as a threat he would shoot up her house or shoot her. L.S. moved closer to defendant and said, "I'm from Oak Park, do what you have to do." Defendant then ran off toward a white minivan. L.S. testified that she was angry, not afraid for herself but was afraid for her daughter and grandchild's safety; she felt at that point, "if it's going to be me or my children, I'll take that." She was "shaking a little bit" after defendant left and immediately called 911. She had not slept in the apartment since the incident because she felt uncomfortable and did not want anyone to hurt her.

M.P. had gone drinking at a nightclub with L.S. and another friend on the night of the incident. She testified that when they entered the apartment, she did not see anyone even though L.S. had said there was someone inside her home. She testified that L.S. chased someone with a golf club but she did not know that person and was not sure whether she saw a gun. When interviewed by police at the scene, M.P. stated she saw a gun and described the individual who possessed it. When confronted with the fact that her police statement was inconsistent with her trial testimony, she testified that she did not remember because she was drunk at the time. She also said she would not "snitch" on anyone.

Officer Jabier Gutierrez investigated the incident the following day. Once he learned defendant's identity through a web-based data system, Officer Gutierrez printed defendant's photo and placed it in a photographic line-up. He showed the line-up to L.S., who identified defendant. Upon his arrest, defendant was searched but did not have a gun in his possession or in his apartment.

At trial, Z.W. testified for the defense that defendant had been her boyfriend. She had invited defendant to stay at the apartment on November 15, 2018, because he was

3

homeless. She testified that after her mother found defendant there and told him to leave, he left willingly. She testified that once outside, her mother pushed defendant and tried to hit him with a golf club. Z.W. claimed that defendant said that if L.S. hit him, he would hit her back. He then got into his car and left. However, when police officers arrived at the scene and asked if Z.W. had seen defendant, she said no.

Following the trial, a jury found defendant guilty of making criminal threats. The jury was unable to reach a verdict on count two and the gun enhancement alleged in count one, and the trial court declared a mistrial as to them. Defendant admitted the prior strike allegation. The trial court then denied defendant's request for probation and sentenced him to the upper term of three years on count one, doubled based on the prior strike conviction, for an aggregate term of six years in state prison. At sentencing, the court awarded defendant a total 297 days of presentence custody (149 actual and 148 conduct).

## DISCUSSION

### I

### *Sufficiency of the Evidence*

Defendant contends that there is not sufficient evidence to support a finding that his conduct caused L.S. to fear for her safety and/or her family's safety.

" 'When considering a challenge to the sufficiency of the evidence to support a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] We presume in support of the judgment the existence of every fact the trier of fact reasonably could infer from the evidence. [Citation.] If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also

4

reasonably be reconciled with a contrary finding. [Citation.] A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' (*People v. Lindberg* (2008) 45 Cal.4th 1, 27.)" (*People v. Covarrubias* (2016) 1 Cal.5th 838, 890.)

The elements of the offense of criminal threat are: (1) the defendant willfully threatened to commit a crime which will result in death or great bodily injury to another person; (2) the defendant made the threat with the specific intent that the statement constituting the threat is to be taken as a threat, even if there is no intent of actually carrying it out; (3) the threat on its face and under the circumstances in which it is made, was so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat; (4) the threat actually caused the person threatened to be in sustained fear for his or her own safety or for his or her immediate family's safety; and (5) the threatened person's fear was reasonable under the circumstances. (§ 422, subd. (a); *People v. Toledo* (2001) 26 Cal.4th 221, 228.)

Defendant contends that the evidence is insufficient to show that L.S.'s fear for her safety or the safety of her daughter and grandchild was reasonable under the circumstances. He contends that because there was no evidence defendant directly threatened L.S.'s family, her claim she was afraid for them was unreasonable. "[A]ll of the surrounding circumstances should be taken into account to determine if a threat falls within the proscription of section 422. This includes the defendant's mannerisms, affect, and actions involved in making the threat as well as subsequent actions taken by the defendant." (*People v. Solis* (2001) 90 Cal.App.4th 1002, 1013.) Here, the evidence shows that defendant told L.S., "You don't know who I am, don't push on me." She took his statement as a threat for she understood his comment to mean that she did not know what he was capable of doing to her. He then pulled out a gun from his waistband, pointed it in the air, *and at L.S.*, and said, "I am FAB and I'll air this motherfucker out." L.S. testified that she understood his comment as a threat to shoot up her house or shoot

5

her. She testified she was more afraid for her family than herself and was prepared to sacrifice herself for her daughter and grandchild. But she also testified that she was shaken up by the incident and did not feel safe staying in the apartment any longer because she did not want anybody to hurt her. This evidence is more than sufficient to establish defendant's threat caused L.S. to reasonably be in sustained fear for her own or her family's safety under the circumstances. Obviously, her family's safety would be in jeopardy if defendant shot up her house. The fact L.S. was more afraid for her family than herself does not diminish her own fear and lasting trauma after defendant threatened her with a gun.

II

*Instructing on Attempted Criminal Threats*

Defendant contends the trial court erred by not instructing on the lesser included offense of attempted criminal threats. Defendant argues the court was required to instruct on the offense because there was substantial evidence L.S. did not experience a reasonable sustained fear and thus the jury could have found him not guilty of making a criminal threat.

Attempted criminal threats is a lesser included offense of making criminal threats. (*People v. Chandler* (2014) 60 Cal.4th 508; *People v. Toledo, supra*, 26 Cal.4th at pp. 226, 230.) This crime occurs when, for example, a written threat is intercepted before it reaches the intended victim, or the victim does not understand the threat, or for some reason is not placed in sustained fear. (See *People v. Chandler*, at p. 515; *People v. Toledo*, at p. 231.)

First, we note that we have found in part I, *supra*, that, indeed, contrary to defendant's argument, there was more than sufficient evidence to prove that L.S. in fact sustained a reasonable and sustained fear that defendant was going to hurt her or her

6

family. That alone defeats defendant's argument regarding the lesser included offense here.

But assuming only for the sake of argument the trial court erred in not giving the instruction, we find the error was harmless. We review the failure to instruct on a lesser included offense under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818, 836. That is, we evaluate whether it is reasonably probable defendant would have obtained a more favorable result had the court instructed on attempted criminal threats. (*People v. Breverman* (1998) 19 Cal.4th 142, 149.)

Here, it is not reasonably probable defendant would have received a different result had the court instructed on attempted criminal threats. As we have discussed, the evidence was overwhelming that defendant's threat caused L.S. to reasonably be in sustained fear for her safety or her family's safety; in other words, fear that was more than fleeting, momentary or transitory. L.S. testified that she took defendant's comments and conduct as a threat to shoot up her house or shoot her. Although she testified that she was not afraid for herself but for her family, her additional testimony demonstrated otherwise. After defendant threatened her, she was "shaking a little bit" and immediately called 911. She testified she had not slept in her apartment since the incident because she did not feel comfortable there and she did not want anyone to hurt her. Additionally, she testified that she was afraid for both her daughter and her grandchild's safety and said, "at that point if it's going to be me or my children, I'll take that." This testimony provided more than substantial evidence that she actually feared for her safety or her immediate family's safety. Further, the evidence as a whole is inconsistent with defendant's theory that L.S. was not reasonably in sustained fear. Accordingly, the record shows it was not reasonably probable defendant would have obtained a different verdict had the court instructed on attempted criminal threats. Any arguable error in not instructing on attempted criminal threats was harmless.

### III

#### *Custody Credits*

Defendant argues he is entitled to 149 days of actual custody credits, and not the 148 reflected in the abstract of judgment and minute order. The People concede the issue on the basis that the trial court's oral pronouncement was an award of 149 days of custody credits. Where the abstract of judgment or clerk's minutes differ from the court's oral pronouncements, the oral pronouncement of judgment controls. (*People v. Delgado* (2008) 43 Cal.4th 1059, 1070; *People v. Zackery* (2007) 147 Cal.App.4th 380, 388.) Accordingly, we shall direct the trial court to prepare an amended minute order and abstract of judgment showing the award of 149 days of actual custody credits.

#### DISPOSITION

The judgment is affirmed. The trial court is directed to amend the minute order and the abstract of judgment consistent with this opinion to reflect that defendant is awarded 149 actual days of custody credit. The trial court shall forward a certified copy of the abstract to the Department of Corrections and Rehabilitation.

 

 

                                   _____

                                   HULL, Acting P. J.

 

We concur:

 

_____

MURRAY, J.

 

_____

KRAUSE, J.