Filed 10/25/23  P. v. Miller CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CORT PATTERSON MILLER,<br><br>        Defendant and Appellant. | A165690<br><br>(Mendocino County<br>Super. Ct. No. 21CR01615) |

Defendant Cort Miller left threatening voicemails for his ex-girlfriend, J.B., after being served with an expired temporary restraining order (TRO) limiting his contact with her and their young son. A jury convicted Miller of felony counts of criminal threats and possession of a firearm by a felon and a misdemeanor count of violating a domestic violence restraining order. The trial court sentenced him to two years in prison.

On appeal, Miller claims that the criminal-threats conviction must be reversed because the jury was not instructed on the lesser included offense of attempted criminal threats. He also claims, and the Attorney General concedes, that the conviction for violating a domestic violence restraining order cannot stand because the TRO had expired. Finally, Miller raises

1

claims related to sentencing under Penal Code section 654, which prohibits multiple punishments for the same conduct.[1]

We reject Miller's claim of instructional error, but we agree with the parties that insufficient evidence supports the conviction for violating a domestic violence restraining order. As a result, we need not reach Miller's sentencing claims. We therefore reverse the misdemeanor conviction, remand for resentencing, and otherwise affirm.

## I.
### FACTUAL AND PROCEDURAL BACKGROUND

Miller and J.B. dated for about six years, from 2015 to February 2021. They lived in Covelo, a small town "[w]here everyone knows everyone." Their son was born in 2017, and J.B. also had a teenage daughter. J.B. testified that her relationship with Miller was "toxic" from the beginning, and he became "very abusive" toward her.

At the time of the charged incident in May 2021, a tribal court was handling a child visitation dispute between Miller and J.B. On April 28, J.B. obtained a TRO against Miller from the tribal court, which barred him from all contact with her and their son except as necessary for court-ordered visitation. The TRO, which was introduced into evidence, stated it expired at the end of a hearing scheduled for May 5.

On the morning of May 7, 2021, while J.B. was at a local store with her daughter, the tribal police notified J.B. that they had served the TRO on Miller. J.B. testified that she "felt better and safe." Twenty to thirty minutes later, however, around 10:00 a.m., Miller called her cell phone as she was leaving the store and left a voicemail message when she did not answer. In

---

[1] All further statutory references are to the Penal Code.

the message, which was played for the jury, Miller stated: "Alright, ya dumb fat bitch[,] watch every fucking person[,] man[,] anybody involved in your fucking family[, J.B.], me and them are going to personally talk when I see them from now on, you wanna serve me paperwork like that, you dumb cunt? Alright. All's fair in love and war. And my—I play a little different. I'll give you a reason to have one of those. I put that on baby's life."

J.B. testified that after hearing the voicemail, she "didn't feel safe, especially being out with [her] daughter at the store." As a result, J.B. "immediately went to the tribal police office" to report that Miller had violated the TRO. As she was arriving there, Miller called her again and left another voicemail message. In that message, which was also played for the jury, Miller stated: "I hope you never go into town cause these bitches are gonna beat the shit out of you[,] bitch. I can't wait. It's what you get. Wanna take my kid away from me, bitch? This town is unsafe for you, plain and simple. You wanna try and pull some stupid ass hoe games like you said you'd never play? But that's what you're playing right now, [J.B.]. Then fine then, we can play stupid ass hoe games too. And I'll show you what it's like to play on my side of the fence. You are not safe in this fucking town. I put money up."

Around 10:30 a.m., the tribal police reported the TRO violation to the Mendocino County Sheriff's Department. Later that afternoon, a sheriff's deputy arrived at J.B.'s home to interview her. The deputy soon left, however, because another officer had located Miller near J.B.'s home.

The sheriff's deputy proceeded to Miller's location. Miller had been pulled over while driving a car with two other passengers. Although Miller claimed the car was his, it was not registered to him. As a result, he was arrested, and the car was towed. Paperwork related to the tribal court case

3

was on the driver's seat and a loaded shotgun was in the trunk.[2] The shotgun was not registered to any of the car's occupants. Miller, who had a prior felony conviction, denied the firearm was his.

In November 2021, Miller was charged with felony counts of criminal threats and possession of a firearm by a felon and a misdemeanor count of violating a domestic violence order.[3] The jury convicted him of all three counts. In July 2022, the trial court sentenced him to two years in prison, composed of the lower term of 16 months for criminal threats, a consecutive term of 8 months for unlawful possession of a firearm, and a concurrent one-year term for the misdemeanor.

## II.
### DISCUSSION

A. *The Trial Court Did Not Have a Sua Sponte Duty to Instruct the Jury on Attempted Criminal Threats.*

Miller claims the trial court erred by not instructing the jury on attempted criminal threats, a lesser included offense of criminal threats. We are not persuaded.

We independently review claims of instructional error. (*People v. Wilson* (2021) 11 Cal.5th 259, 295.) Even where, as here, a defendant does not request an instruction on a lesser included offense, a trial court must give

---

[2] A photograph of a packet of papers on the driver's seat was admitted into evidence. The photograph showed only the first page, a notice to appear at a May 25, 2021 hearing, and the packet itself was excluded for lack of foundation.

[3] The charges were brought under sections 422 (criminal threats), 29800, subdivision (a)(1) (unlawful firearm possession), and 273.6, subdivision (a) (violation of domestic violence restraining order). Miller was originally charged with a second count of violating a domestic violence restraining order based on a separate incident, but that count was later dismissed at the prosecution's request.

4

the instruction " ' " 'when the evidence raises a question as to whether all of the elements of the charged offense were present.' " ' " (*Ibid.*) "For the duty to instruct on a lesser included offense to arise, there must be ' "substantial evidence" ' " to support the lesser offense. (*People v. Millbrook* (2014) 222 Cal.App.4th 1122, 1137.) "In this context, substantial evidence is evidence from which reasonable jurors could conclude ' "that the lesser offense, but not the greater, was committed." ' " (*People v. Medina* (2007) 41 Cal.4th 685, 700.) In deciding whether substantial evidence of a lesser included offense exists, we do " 'not evaluate the credibility of witnesses, a task for the jury' " (*Millbrook*, at p. 1137), or rely on speculation. (*People v. Rogers* (2009) 46 Cal.4th 1136, 1169.)

The elements of criminal threats under section 422 are: "(1) that the defendant 'willfully threaten[ed] to commit a crime which [would] result in death or great bodily injury to another person,' (2) that the defendant made the threat 'with the specific intent that the statement . . . [was] to be taken as a threat, even if there [was] no intent of actually carrying it out,' (3) that the threat—which may be 'made verbally, in writing, or by means of an electronic communication device'—was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for [their] own safety or for [their] immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227–228.)

Attempted criminal threats is a lesser included offense of criminal threats. (*People v. Chandler* (2014) 60 Cal.4th 508, 514.) The lesser offense

5

"encompasses situations where a defendant intends to commit a criminal threat 'but is thwarted from completing the crime by some fortuity or unanticipated event.' " (*Id.* at p. 515.)  One example is when a defendant, " 'acting with the requisite intent, makes a sufficient threat that is received and understood by the threatened person, but, for whatever reason, the threat does not *actually* cause the threatened person to be in sustained fear for [their] safety even though, under the circumstances, that person reasonably could have been placed in such fear.' " (*Ibid.*)

Miller claims that "[t]here was substantial evidence from which the jury could have found that [J.B.] did not suffer actual or reasonable 'sustained fear,' " meaning it could have convicted him of only attempted criminal threats.  He emphasizes that he did not make the threats in person, and J.B. went to the police station right after receiving the first one; that there was no evidence he was violent toward her after they broke up; and that she voluntarily had contact with him after the incident.  Miller also argues that J.B.'s credibility was compromised in various respects.

Miller fails to identify substantial evidence that he committed only attempted criminal threats.  To begin with, one element of attempted criminal threats is that "the intended threat under the circumstances was sufficient to cause a reasonable person to be in sustained fear." (*People v. Chandler, supra,* 60 Cal.4th at p. 525.)  Thus, to the extent Miller claims that J.B. could not have reasonably experienced sustained fear, that would establish that he did not commit a crime at all, not that he was guilty of only the lesser included offense.

Miller's arguments about J.B.'s credibility are also unavailing.  (See *People v. Millbrook, supra,* 222 Cal.App.4th at p. 1137.)  Of course, if there was substantial evidence that Miller committed criminal threats, there was

6

substantial evidence that he committed attempted criminal threats. (See *People v. Ngo* (2014) 225 Cal.App.4th 126, 156 [" ' "as an abstract proposition, every completed crime necessarily involves an attempt to commit it" ' "].) But when determining whether an instruction on a lesser included offense is required, the question is not whether the jury could have disregarded evidence establishing the greater offense's additional elements. Here, that means that the fact that the jury could have disbelieved J.B.'s testimony that she was actually afraid does not establish that an instruction on attempted criminal threats was required.

Rather, the relevant question is whether there was substantial evidence that even though J.B. could have reasonably felt sustained fear as a result of a threat, she was not actually afraid. J.B. unequivocally testified that she felt fear upon hearing the first voicemail and still feared Miller at the time of trial. Even if there was other evidence that might call the credibility of this testimony into question and entitle the jury to disregard it, there was no substantial evidence that she was *not* afraid. Therefore, this claim fails.

B.    *No Substantial Evidence Supports Miller's Conviction for Violating a Domestic Violence Restraining Order.*

Miller also claims that his misdemeanor conviction must be reversed because the TRO had already expired when he was served with it. We accept the Attorney General's concession that insufficient evidence supports the conviction.

When determining whether a conviction lacks sufficient evidence, " 'we review the whole record to determine whether . . . [there is] substantial evidence to support the verdict . . . such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citation.] In applying this test, we review the evidence in the light most favorable to the

7

prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.)

Section 273.6, subdivision (a), prohibits "[a]ny intentional and knowing violation of a protective order" issued under a specified statute. Of course, the protective order must be in effect for it to be violated. Here, although J.B. testified that she thought another TRO issued later, the only TRO admitted into evidence expired two days before Miller was served with it. As a result, there was no substantial evidence that Miller violated a valid TRO, and his misdemeanor conviction must be reversed.

### III.
#### DISPOSITION

The conviction for violating a domestic violence restraining order is reversed, and the matter is remanded for resentencing. The judgment is otherwise affirmed.

8

_____
Humes, P.J.

WE CONCUR:


_____
Banke, J.


_____
Getty, J.*


*Judge of the Superior Court of the County of Solano, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*People v. Miller*  A165690

9